[No. A067490. First Dist., Div. Five. Oct. 12, 1995.]

ALAMEDA COUNTY LAND USE ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF HAYWARD et al., Defendants and Respondents.

**COUNSEL**

Meyers, Nave, Riback, Silver & Wilson, Michael R. Nave, Rick W. Jarvis and Frederik A. Jacobsen for Plaintiffs and Appellants.

Robin L. Rivett and Gregory W. McCracken as Amici Curiae on behalf of Plaintiffs and Appellants.

Michael J. O'Toole and Michael H. Roush, City Attorneys, for Defendants and Respondents.

**OPINION**

**HANING, J.**—Plaintiffs and appellants Alameda County Land Use Association et al.[1] appeal the dismissal of their action for injunctive and declaratory relief after the demurrer of defendants and respondents City of Hayward et al.[2] was sustained without leave to amend. They contend the trial court erred in ruling their action was not ripe because they had not been injured by adoption of a memorandum of understanding (MOU) entered into between respondents concerning approximately 13,000 acres of open space.

### FACTS AND PROCEDURAL HISTORY

██ When reviewing the sufficiency of a complaint against a demurrer, we assume the truth of all properly pled material facts and consider those matters which may be judicially noticed (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]), and we report them accordingly.

On or about November 16, 1993, respondents entered into an MOU with each other concerning a parcel of approximately 13,000 acres known as the Ridgelands Area and consisting primarily of open pasture space. Portions of the Ridgelands Area lie within the city limits of Pleasanton and Hayward;

---

[1]Also appealing are Contra Costa-Alameda County Cattlemen's Association, Alameda County Farm Bureau, Alameda County Property & Homeowner Association, Frank Neu and Marie Cronin.

[2]Also responding are City Council of the City of Hayward, City of Pleasanton, City Council of the City of Pleasanton, County of Alameda, and Board of Supervisors of the County of Alameda.

the majority lies within the unincorporated area of Alameda County. Part of this unincorporated area lies within Pleasanton's "sphere of influence."[3]

Paragraph one of the MOU states that respondents shall use their "best efforts" to adopt into their respective general plans, certain specified goals and policies concerning the Ridgelands Area. Paragraph three provides that if each respondent's general plan is so amended, any further amendments to "that portion of each [respondent's] General Plan applicable to the Ridgelands Area shall provide that said amendment shall not be effective unless there are parallel amendments adopted by the other [respondents]."

The goals and policies specified in the MOU were substantially adopted into Hayward's general plan by resolution of its city council on July 27, 1993, and into Pleasanton's general plan by a voter initiative entitled "The Pleasanton Ridgelands Area Plan Initiative" on November 2, 1993, prior to execution of the MOU. The Hayward general plan now provides that "Any subsequent amendments to the Ridgelands Area planning policies of this general plan shall not be effective unless and until parallel amendments are made to the general plans of Alameda County and the City of Pleasanton." The Pleasanton initiative states that the initiative "shall not be amended as to the land use designations nor repealed except by a vote of the people of Pleasanton. Any such amendments or repeal of this initiative shall not be effective unless there are parallel amendments (or a parallel repeal) adopted by the City of Hayward and the County of Alameda." Alameda County has not yet adopted all specified MOU goals and policies into its general plan.

Appellants are two individuals owning property within the unincorporated portion of the Ridgelands Area, and four nonprofit organizations representing residents or property owners in all three jurisdictions of the Ridgelands Area. They filed the instant action to obtain a declaration that the MOU was invalid on its face and as applied to their property within the Ridgelands Area, and unenforceable because paragraphs one and three constitute an unlawful attempt by each respondent (1) contractually and legislatively to divest itself of, surrender and impair its discretion and power to enact legislation within its authority, and (2) to delegate to other agencies legislative land use authority exclusively delegated to it by law, including Government Code sections 65350 et seq. and 65588. Therefore, they contend, the MOU unlawfully prohibits and restrains each respondent from amending its

---

[3]A "sphere of influence" is "a plan for the probable physical boundaries and service area of a local agency," as determined by the local agency formation commission of a county. (Gov. Code, §§ 56027, 56076, 56325; see *City of Agoura Hills* v. *Local Agency Formation Com.* (1988) 198 Cal.App.3d 480, 483 [243 Cal.Rptr. 740].)

general plan to include certain goals and policies applicable to property in the Ridgelands Area, regardless of whether that respondent, now or in the future, finds such goals and policies best promote the public interest or welfare of the respondent's residents.

Appellants also sought an injunction against implementation of the MOU on the grounds implementation would irreparably harm them and the general public because (1) adoption would occur without adequate independent consideration by each respondent of whether the specified goals and policies are in the public interest; (2) once the specified goals and policies are adopted, each respondent will deem future amendments to its general plan inapplicable to the Ridgelands Area unless parallel general plan amendments are made by all respondents, regardless of whether it deems such future amendments to be in the public interest; and (3) the rights of individual landowners to ask the local government wherein their property lies to amend its general plan's goals and policies applicable to their property and act independently upon that request in light of the public interest are violated.

Respondents demurred on the grounds that appellants' complaint failed to state a cause of action, that certain claims were not ripe for review, and that others were not subject to facial challenge.

The trial court first concluded that appellants did not allege they were parties to or had enforceable rights under the MOU. Second, it ruled the complaint lacked allegations that an actual controversy admitting of definitive and conclusive relief existed, or that appellants were actually injured or deprived of any rights by the adoption of the MOU. Third, it concluded the complaint lacked allegations that (1) the MOU had been enforced to appellants' detriment, (2) that appellants attempted to file the necessary land-use applications to perfect their "as applied" claims, or (3) that the MOU would not substantially advance a legitimate state interest. The court sustained respondents' demurrer without leave to amend because it felt appellants did not show they could amend their complaint to allege such controversy, rights or lack of purpose with respect to the MOU, as opposed to "future land use decisions."

## DISCUSSION

### I

The principal issue in this appeal is whether appellants' complaint presents a justiciable controversy. Under Code of Civil Procedure section 1060, "Any person interested under a written instrument, . . . or under a

contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract."

Respondents' demurrer admits the truth of all material factual allegations of appellants' complaint. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503].) If those facts reveal an actual controversy exists between the parties, the complaint is legally sufficient for declaratory relief. (*Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 908 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].) Sustaining a demurrer when the complaint reveals such a controversy constitutes error. (*Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728, 737 [146 P.2d 673, 151 A.L.R. 1062]; *Browning* v. *Aymard* (1964) 224 Cal.App.2d 277, 281 [36 Cal.Rptr. 604].)

■ Before a controversy is ripe for adjudication it " 'must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citation.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 171 [188 Cal.Rptr. 104, 655 P.2d 306] quoting *Aetna Life Ins. Co.* v. *Haworth* (1937) 300 U.S. 227, 240-241 [81 L.Ed. 617, 621, 57 S.Ct. 461, 108 A.L.R. 1000].) "The 'actual controversy' referred to in [Code of Civil Procedure section 1060] is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do. [Citations.]" (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 117 [109 Cal.Rptr. 799, 514 P.2d 111].) "The principle that courts will not entertain an action which is not founded on an actual controversy is a tenet of common law jurisprudence, the precise content of which is difficult to define and hard to apply. . . . A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618].)

In the context of a declaratory relief action seeking review of the propriety of an administrative act before any application of the act to the parties

challenging it, the United States Supreme Court observed: "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (*Abbott Laboratories* v. *Gardner* (1967) 387 U.S. 136, 149 [18 L.Ed.2d 681, 691, 87 S.Ct. 1507]; accord, *Pacific Legal Foundation* v. *California Coastal Com.*, *supra*, 33 Cal.3d at p. 171.)

 Appellants acknowledged at oral argument they have not yet attempted to obtain an amendment to the general plan of their individual jurisdictions since the execution of the MOU, so no controversy yet exists over any specific application of the MOU's provisions. Nevertheless, they argue, a challenge to the facial validity of an administrative act creates an actual controversy appropriate for judicial relief.

An action for declaratory relief lies when the parties are in fundamental disagreement over the construction of particular legislation, or they dispute whether a public entity has engaged in conduct or established policies in violation of applicable law. (*Zeitlin* v. *Arnebergh*, *supra*, 59 Cal.2d at p. 905; *Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 636-637 [12 Cal.Rptr. 671, 361 P.2d 247]; *Californians for Native Salmon etc. Assn.* v. *Department of Forestry* (1990) 221 Cal.App.3d 1419, 1427 [271 Cal.Rptr. 270]; *Mefford* v. *City of Tulare* (1951) 102 Cal.App.2d 919, 922 [228 P.2d 847].) Although reversing on other grounds, *Mefford* held that a declaratory relief action was an appropriate vehicle for the plaintiff to challenge the validity of a subdivision ordinance due to its manner of adoption, even though the plaintiff had taken no affirmative steps to comply therewith. *Native Salmon*, *supra*, approved declaratory relief as the appropriate form of action in the face of an allegation that a state administrative agency's "overarching, quasi-legislative policy" ignored or violated applicable laws and regulations, even though no specific agency decision was under attack. (221 Cal.App.3d at pp. 1428-1429.)

Appellants' complaint demonstrates a genuine controversy between the parties concerning the abnegation of respondents' individual governmental and administrative powers. Appellants have alleged that by executing the MOU, particularly paragraphs one and three, the "best efforts" and "parallel amendments" requirements, respondents have impaired the future exercise of their own legislative authority to amend their respective general plans.[4] These allegations sufficiently state a claim for declaratory relief. Insofar as

---

[4]As appellants note, under the MOU a landowner whose property lies solely within the unincorporated area of Alameda County cannot secure a rezoning of the property which requires a general plan amendment simply by obtaining the consent of the Alameda County

the validity of these paragraphs raises a pure question of law, it is incumbent on us to pass upon this question that must be decided to reach a final determination of the case. (Code Civ. Proc., § 53; *Zeitlin* v. *Arnebergh, supra,* 59 Cal.2d at p. 908; *Salsbery* v. *Ritter* (1957) 48 Cal.2d 1, 7 [306 P.2d 897]; see also *Abbott Laboratories* v. *Gardner, supra,* 387 U.S. at 149 [18 L.Ed.2d at pp. 691-692].)

## II

Not only are municipal and county legislative bodies required to adopt comprehensive, long-term general plans (Gov. Code, § 65300), they are required to engage in periodic review and revision thereof (in the case of the housing element, not less than every five years). (Gov. Code, §§ 65103, subd. (a), 65588, subd. (b).) If they deem it to be within the public interest, cities and counties may amend their general plans. (Gov. Code, § 65358.)

The adoption, review and amendment of a general plan calls for the exercise of a delegated governmental power which comes from the general laws, specifically the Planning and Zoning Law. (Gov. Code, §§ 65000-66499.58.) A local legislative body cannot surrender or impair its delegated governmental power or that of successor legislative bodies either by ordinance or contract. (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 929 [120 Cal.Rptr. 707, 534 P.2d 403]; *In re Collie* (1952) 38 Cal.2d 396, 398 [240 P.2d 275]; *McNeil* v. *City of South Pasadena* (1913) 166 Cal. 153, 155 [135 P. 32].) More particularly, a local government may not contract away its right to exercise its police power in the future, and land use regulations involve the exercise of police power. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 800 [132 Cal.Rptr. 386, 553 P.2d 546]; *DeLucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 823 [225 Cal.Rptr. 43].)

Respondents' agreement, as reflected in paragraph three of the MOU, that their individual general plan amendments are ineffective unless like amendments are made to the other jurisdictions' general plans is a surrender of each respondent's power to amend its own general plan. This policy divests each respondent, presently and in the future, of its sole and independent authority to amend its respective general plan, by providing outside jurisdictions a veto over such amendments. What the law has designed to be the

Board of Supervisors. The landowner must also obtain the consent of the Cities of Hayward and Pleasanton. In the case of Pleasanton, the city council cannot grant such relief; an amendment of that component of its general plan affecting the Ridgelands Area requires confirmation by the electorate.

exclusive power of an individual jurisdiction has become a contingent power, dependent on the concurrence of other jurisdictions.[5]

We do not imply that the motive behind the MOU was anything but laudable—a cooperative effort to protect a valuable regional asset from ever increasing urban and suburban encroachment. It reflects the letter and spirit of the statutory scheme for general plans, which mandates consideration of the "public interest" beyond individual city or county boundary lines prior to amendment. (See Gov. Code, §§ 65101, 65351, 65352.) In fact, appellants themselves have not alleged that any of the MOU's specified goals and policies, other than the parallel amendment policy, are *not* in the public interest. We also appreciate, as Pleasanton's counsel explained during oral argument, why respondents did not seek the formation of a regional planning board (Gov. Code, § 65060 et seq.) to prepare a regional plan for the Ridgelands Area; doing so would create another layer of bureaucracy, and the board's decisions would be advisory only. (Gov. Code, § 65060.8.) Nevertheless, as presently drafted the MOU constitutes an impermissible divestment by respondents of their power and obligation to enact legislation affecting the lands within their respective jurisdictions.

### Disposition

The judgment is reversed and the matter remanded with directions to vacate the order sustaining respondents' demurrer.

Peterson, P. J., and King, J., concurred.

A petition for a rehearing was denied November 1, 1995, and respondents' petition for review by the Supreme was denied January 18, 1996.

---

[5]Appellants do not dispute that cities and counties may voluntarily enter into a joint powers agreement (Gov. Code, § 6500 et seq.) to share land-use powers. (See, e.g., *Dateline Builders, Inc.* v. *City of Santa Rosa* (1983) 146 Cal.App.3d 520, 523-524 [194 Cal.Rptr. 258].) Respondents acknowledged at oral argument that the MOU is not such an agreement.