[No. S099999. Aug. 29, 2002.]

CITY OF COTATI, Plaintiff and Appellant, v.
GENE CASHMAN et al., Defendants and Respondents.

## COUNSEL

Endeman, Lincoln, Turek & Heater, Donald R. Lincoln, Henry E. Heater, Linda B. Reich; Walter & Pistole and Jeffrey A. Walter for Plaintiff and Appellant.

Pacific Legal Foundation, R. S. Radford, Meriem L. Hubbard and Harold E. Johnson for Defendants and Respondents.

Law Office of James J. Moneer and James J. Moneer as Amici Curiae on behalf of Defendants and Respondents.

Levy, Ram, Olson & Rossi, Karl Olson; Karlene W. Goller; Harold W. Fuson, Jr.; and Thomas W. Newton for California Newspaper Publishers Association, Los Angeles Times and Copley Press, Inc., as Amici Curiae.

## OPINION

**WERDEGAR, J.**—We must decide in this case whether a municipality's state court action for declaratory relief respecting the constitutionality of a mobilehome park rent stabilization ordinance, filed in response to a federal court declaratory relief action brought by park owners respecting the same ordinance, constitutes a strategic lawsuit against public participation

(SLAPP)[1] within the purview of Code of Civil Procedure section 425.16 (section 425.16; the anti-SLAPP statute). We conclude it does not.[2]

### BACKGROUND

In 1998, the City of Cotati (City) adopted a mobilehome park rent stabilization program. (Cotati Ord. No. 680, adding ch. 19.14 to Cotati Mun. Code.) After City enacted the program, Gene Cashman and others, owners of mobilehome parks (collectively Owners), sued City in the United States District Court for the Northern District of California. Owners sought declaratory relief, an injunction, and damages allegedly resulting from City's ordinance. In requesting a declaratory judgment, Owners alleged that "the following question [is] in actual controversy between the parties: Whether [City] effects an uncompensated regulatory taking by implementing and enforcing the rent-restriction Ordinance, in violation of the Fifth and Fourteenth Amendments to the United States Constitution."

Subsequently, City sued Owners in Sonoma County Superior Court. City's complaint outlined a cause of action for declaratory relief. City alleged that "An actual controversy has arisen and now exists between [City] and [Owners] relative to their respective rights and duties in that [City] contends that the [mobilehome park rent stabilization] ordinance and resolution are valid and enforceable, both on their face and as construed by [City]. On the other hand, [Owners] contend that said ordinance, on its face is unenforceable, invalid, and void as effecting an unconstitutional taking . . . ." On information and belief, City also alleged that Owners contended the ordinance effected a taking in violation of the California Constitution. City sought a judgment "declaring the respective rights and duties of the parties under the ordinance in question and that the ordinance is constitutional, valid, and enforceable on its face and as applied to [Owners]." After the state court action was filed, City filed a motion in federal court asking that Owners' action be dismissed on abstention grounds. (*Younger v. Harris* (1971) 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669].)

Owners shortly thereafter moved in state court, under the anti-SLAPP statute, to strike City's complaint. Owners argued that City's filing of its

---

[1]The acronym was coined by Penelope Canan and George W. Pring, professors at the University of Denver. (See generally Canan & Pring, *Strategic Lawsuits Against Public Participation* (1988) 35 Soc. Probs. 506.)

[2]This case has two companions. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82 [124 Cal.Rptr.2d 530, 52 P.3d 703]; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) We granted review in this trio of cases in order to maximize the clarity and guidance respecting application of the anti-SLAPP statute the full group of decisions may provide to bench and bar.

state court action arose from Owners' filing of their earlier federal action and, therefore, fell within the ambit of the anti-SLAPP statute. As evidence that City's state court action was a SLAPP, Owners pointed to references in City's complaint to Owners' contention in the federal action that City's ordinance constituted a taking.

City concedes that its purpose in filing the state court action was to gain a more favorable forum in which to litigate the constitutionality of its mobile-home park rent stabilization ordinance. Certain potentially applicable state law decisions on mobilehome park rent regulation, City notes, were favorable to its position in the underlying dispute. (See *Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784 [90 Cal.Rptr.2d 598]; *Sandpiper Mobile Village v. City of Carpinteria* (1992) 10 Cal.App.4th 542 [12 Cal.Rptr.2d 623].) City also concedes that in filing the state court action it intended subsequently to seek to persuade the federal court to abstain from hearing Owners' suit.

The trial court ruled in favor of Owners on the anti-SLAPP motion. Noting that City's action was filed shortly after Owners' federal action, involved "the exact contention" made by Owners therein, and named only Owners as defendants, the trial court concluded Owners had, at the outset, carried their burden to show that the action "arose out of [Owners'] right of petition under the U.S. Constitution as defined in [section 425.16]." (See § 425.16, subd. (b)(1).) Having concluded that Owners had carried their initial burden, the trial court considered whether City had demonstrated a probability of prevailing on its claim. Concluding City had not, the trial court granted Owners' anti-SLAPP motion and ordered City's action dismissed. The Court of Appeal reversed. We granted Owners' petition for review.

## DISCUSSION

Section 425.16 provides, inter alia, that "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Id.*, subd. (b)(1).) "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement

or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (*Id.*, subd. (e).)

Owners in their petition asked us to address two issues—whether a defendant in order to prevail on an anti-SLAPP motion must demonstrate that the targeted action was intended to chill the defendant's free speech or petition rights; and whether a moving defendant must show that the action had the effect of chilling such rights. We conclude that defendants moving under the anti-SLAPP statute have neither burden. Nevertheless, because City's action arose from the underlying controversy respecting the validity of City's ordinance rather than from Owners' federal lawsuit, we further conclude that City's action was not subject to a special motion to strike under section 425.16.

A. *Intent to Chill*

City states that it filed this action in an attempt to obtain a more favorable forum than federal court in which to litigate the constitutionality of its mobilehome park rent stabilization ordinance. "City's initial goal was to use the state action to persuade the federal court to abstain in favor of the state proceeding." City in fact filed a motion in federal district court asking that the federal action be dismissed on a number of grounds, including abstention in favor of the state action. "A secondary, alternative goal," City claims, "was to try to obtain a quick favorable decision upholding the Ordinance which then could be used for res judicata purposes in the federal court." Owners argue that City's real intention in filing this action went beyond the desire for a favorable forum. Owners speculate City actually "hoped to discourage [Owners] from continuing to litigate by burdening them with defending a new, costly, and duplicative lawsuit in a second jurisdiction."

Whether City's subjective motivations for filing this action were, in reality, primarily as City describes them, or primarily in accordance with Owners' speculation, cannot be ascertained with certainty from the record. As Owners ultimately concede, "City's subjective intent . . . will probably never be known." Fortunately, the question of subjective intent is not relevant. As discussed in detail in *Equilon*, *supra*, 29 Cal.4th 53, the anti-SLAPP statute, construed in accordance with its plain language, incorporates no intent-to-chill pleading or proof requirement. (*Id.* at pp. 58-67.) Consequently, a defendant who meets its burden under the statute of demonstrating that a targeted cause of action is one "arising from" protected activity (§ 425.16, subd. (b)(1)) faces no additional requirement of proving the plaintiff's subjective intent. (*Equilon*, *supra*, at pp. 66-67.)

B. *Chilling Effect*

The same considerations of law and policy, generally, that bar judicial imposition on the anti-SLAPP statute of an intent-to-chill proof requirement bar judicial imposition of a chilling-effect proof requirement. (See *Equilon, supra,* 29 Cal.4th at pp. 58-67; see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*) [rejecting judicial imposition of a "public interest" proof requirement].) Here, as in *Equilon, supra,* 29 Cal.4th 53, the plain language of the statute and indicia of legislative intent preclude any such requirement.

Thus, section 425.16 nowhere states that in order to prevail on an anti-SLAPP motion, a defendant must demonstrate that the cause of action complained of has had, or will have, the actual effect of chilling the defendant's exercise of speech or petition rights. Nor is there anything in section 425.16's operative sections implying or even suggesting a chilling-effect proof requirement. Since section 425.16 neither states nor implies such a requirement, for us judicially to impose one—as City suggests we should—would violate the foremost rule of statutory construction. █ When interpreting statutes, "we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . . . 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

█ Legislative intent as gleaned from legislative history materials is consistent with this interpretation. "Legislative history materials respecting the origins of section 425.16 indicate the statute was intended broadly to protect, inter alia, direct petitioning of the government and petition-related statements and writings—that is, 'any written or oral statement or writing made before a legislative, executive, or judicial proceeding' (§ 425.16, subd. (e)(1)) or 'in connection with an issue under consideration or review' (*id.,* subd. (e)(2)) by such." (*Briggs, supra,* 19 Cal.4th at p. 1120.) "The fact the Legislature expressed a concern in the statute's preamble with lawsuits brought 'primarily' to chill First Amendment rights does not mean that a court may add this concept as a separate requirement in the operative sections of the statute." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 480 [102 Cal.Rptr.2d 205].) Indeed, "[a]ny such requirement would be 'too restrictive' [citation] in light of the Legislature's unqualified desire to 'encourage continued participation in matters of public significance' (§ 425.16, subd. (a))." (*Equilon, supra,* 29 Cal.4th at p. 61.)

In short, section 425.16 expressly "defines the types of claims that are subject to the anti-SLAPP procedures" (*Chavez v. Mendoza* (2001) 94

Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825]), i.e., causes of action arising from *any* act of protected speech or petitioning as these terms are defined in subdivision (e)(1)-(4) of the statute. The Legislature included no limitation relating to chilling effect. Our imposing one, therefore, not only would contravene the Legislature's express command that section 425.16 be "construed broadly" (*id.*, subd. (a)), it would compromise the Legislature's deliberately expansive remedial design. (See *Equilon, supra*, 29 Cal.4th at p. 61.)

Finally, here as in *Equilon*, imposing a chilling-effect proof requirement would deprive of anti-SLAPP protection petitioning that is absolutely privileged under the litigation privilege (Civ. Code, § 47, subd. (b)) whenever a moving defendant could not separately prove that the targeted cause of action actually has chilled, or will chill, protected speech. ▮ "It is a fundamental rule of statutory construction that statutes should be construed to avoid anomalies." (*State of South Dakota v. Brown* (1978) 20 Cal.3d 765, 775 [144 Cal.Rptr. 758, 576 P.2d 473].) ▮ We previously have adhered to that rule in construing the anti-SLAPP statute (*Briggs, supra*, 19 Cal.4th at p. 1121; see also *Equilon, supra*, 29 Cal.4th at pp. 64-65), and we do so here as well.

In sum, judicial imposition of a chilling-effect proof requirement would contradict the anti-SLAPP statute's plain language, undermine the Legislature's expressed intentions, and create anomalies. The statute contains no such requirement.

C. *"Arising From"*

▮ As explained more fully in *Equilon, supra*, 29 Cal.4th 53, section 425.16 requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim. (See generally *Equilon, supra*, at pp. 66-67.) As will appear, defendant Owners in this case failed to meet their threshold burden of demonstrating that City's action is one arising from Owners' protected speech or petitioning.

It is indisputably true, as the trial court observed, that City's action was filed shortly after Owners filed their claim in federal court. But the mere fact an action was filed after protected activity took place does not mean it arose

from that activity. The anti-SLAPP statute cannot be read to mean that "any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights." (*Computer-Xpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1002 [113 Cal.Rptr.2d 625]; see also *Briggs, supra,* 19 Cal.4th at p. 1114 ["arise from" means "based upon"].)

While City's complaint repeatedly refers to the underlying subject matter of Owners' federal action (i.e., the mobilehome park rent stabilization ordinance and arguments respecting its validity), it contains no reference to the action itself. California courts rightly have rejected the notion "that a lawsuit is adequately shown to be one 'arising from' an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself." (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 1002.)

To construe "arising from" in section 425.16, subdivision (b)(1) as meaning "in response to," as Owners have urged, would in effect render all cross-actions potential SLAPP's. We presume the Legislature did not intend such an absurd result. (See generally *People v. Mendoza* (2000) 23 Cal.4th 896, 912, fn. 7 [98 Cal.Rptr.2d 431, 4 P.3d 265].) Absurdity aside, to suggest that all cross-actions arise from the causes of action in response to which they are pled would contravene the statutory scheme governing cross-complaints. (See Code Civ. Proc., § 426.10, subd. (c) [defining "related cause of action"]; *id.,* § 426.30 [compulsory cross-complaints]; *id.,* § 428.10 [permissive cross-complaints].) The Legislature expressly has provided that a cross-action may "arise[] out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges" (*id.,* § 426.10, subd. (c); see also *id.,* § 428.10, subd. (b)(1)), rather than out of that cause of action itself. Indeed, Owners' counsel, when arguing before the trial court, acknowledged City's action could not be a SLAPP if City had filed it as a counterclaim[3] in Owners' federal action.

Nor do Owners persuasively distinguish responsive litigation, generally. The anti-SLAPP statute, itself, treats complaints identically with cross-complaints. (§ 425.16, subd. (h).) Just as a cross-complaint often "arises out

---

[3]Terminology respecting cross-actions differs in California and federal courts. "In 1971 the Legislature rewrote the provisions relating to cross-actions (Stats. 1971, ch. 244), dictating that a complaint meant a complaint or cross-complaint (Code Civ. Proc., § 426.10), thus [technically] eliminating the counterclaim by transforming those cross-actions which were formerly counterclaims into cross-complaints. (Code Civ. Proc., § 428.80.)" (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 52, fn. 2 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) The Federal Rules of Civil Procedure continue to refer to "counterclaims." (See generally Fed. Rules Civ.Proc., rule 13, 28 U.S.C.)

of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges" (Code Civ. Proc., § 426.10, subd. (c); see also *id.*, § 428.10, subd. (b)(1)), so may a responsive but independent lawsuit arise from the same transaction or occurrence alleged in a preceding lawsuit, without necessarily arising from that earlier lawsuit itself. (See *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 651 [49 Cal.Rptr.2d 620].)

Owners also have complained that City filed its lawsuit tactically, so that they would be "forced . . . to bear the expense and burden of simultaneously litigating two different legal actions in two different jurisdictions." But City's subjective intent, as discussed, is not relevant under the anti-SLAPP statute. As a corollary, a claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 924 [116 Cal.Rptr.2d 187] (*Kajima*).) That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such. To focus on City's litigation tactics, rather than on the substance of City's lawsuit, risks allowing Owners to circumvent the showing expressly required by section 425.16, subdivision (b)(1) that an alleged SLAPP *arise from* protected speech or petitioning. (*Kajima, supra*, at p. 933, fn. 7.)[4]

In short, the statutory phrase "cause of action . . . arising from" means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. (See *ComputerXpress, Inc. v. Jackson, supra*, 93 Cal.App.4th at p. 1001, and cases cited.) In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. (*Equilon, supra*, 29 Cal.4th at pp. 67-68; see also *Briggs, supra*, 19 Cal.4th at p. 1114.) "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . ." (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58]; see also *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 820 [33 Cal.Rptr.2d 446].)

---

[4]Contrary to Owners' implication, thus to emphasize the anti-SLAPP statute's express requirements does not leave litigants confronting meritless, retaliatory countersuits without a remedy. "If a [defendant or] cross-defendant believes that a [responsive complaint or] cross-complaint has been filed 'for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,' or that the claims against it are frivolous or lacking in evidentiary support, then it may move for sanctions, including attorney fees and other expenses, to be awarded in the trial court's discretion." (*Kajima, supra*, 95 Cal.App.4th at p. 934, quoting Code Civ. Proc., § 128.7.)

## D. *Application*

What activity or facts underlie the City's cause of action for declaratory relief? ■■■ "The fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject." (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 817, p. 273.) ■■■ Owners inaccurately state that "City has acknowledged that its only basis for alleging an actual controversy . . . was the fact that the park owners had previously sued the City in federal court." In fact, City has argued only that Owners' federal court action informed City of the existence of an actual controversy justifying declaratory relief, not that Owners' federal action, itself, *constituted* that controversy. City has consistently taken the position that the actual controversy with respect to which it seeks declaratory relief is the same as the controversy with respect to which Owners earlier sought declaratory relief in federal court—i.e., the controversy over the constitutionality of City's mobilehome park rent stabilization ordinance. And while the courts below have drawn different conclusions from the fact, both have recognized that the gravamen of City's state court action is the same as that of Owners' federal court action.

That the constitutionality of an ordinance can be a proper subject for declaratory relief is without doubt. "An action for declaratory relief lies when the parties are in fundamental disagreement over the construction of particular legislation, or they dispute whether a public entity has engaged in conduct or established policies in violation of applicable law." (*Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1723 [45 Cal.Rptr.2d 752].)

In deciding whether the "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).) Examination of the relevant papers in this case confirms City's contention that its action alleges the existence of a controversy—and seeks a declaration—respecting the validity of City's mobilehome park rent stabilization ordinance. City alleged in its complaint, as mentioned, that "[a]n actual controversy has arisen and now exists between plaintiff and defendants relative to their respective rights and duties in that plaintiff contends that the ordinance and resolution are valid and enforceable, both on their face and as construed by plaintiff." In moving to strike City's action as a SLAPP, Owners pointed to this same allegation. Three of the four supporting affidavits submitted by Owners purport to demonstrate only that Cotati's mobilehome parks were in compliance with City's ordinance; they contain no reference whatsoever to Owners' federal lawsuit. The other affidavit, by

Owners' counsel in the federal action, purports to demonstrate that City, after filing its state court action, moved to dismiss the federal action on abstention grounds, a point City does not dispute. The only materials City lodged in opposition to the anti-SLAPP motion were cases tending to support the validity of the rent stabilization ordinance. And in its briefing, City reiterated that it was "merely . . . seeking a resolution of the controversy" underlying both lawsuits.

The distinction City invokes between Owners' federal court action on the one hand and the controversy underlying that action (as well as City's own action) on the other is not an ephemeral or merely formalistic one. The requirement that plaintiffs seeking declaratory relief allege "the existence of an *actual, present controversy*" (5 Witkin, Cal. Procedure, *supra*, Pleading, § 817, p. 273) would be illusory if a plaintiff could meet it simply by pointing to the very lawsuit in which he or she seeks that relief. Obviously, the requirement cannot be met in such a bootstrapping manner; "a request for declaratory relief will not create a cause of action that otherwise does not exist." (*Mallenbaum v. Adelphia Communications Corp.* (E.D.Pa., Dec. 29, 1994, Civ. A No. 93-7027) 1994 WL 724981, *6, fn. 9, affd. (3d Cir. 1996) 74 F.3d 465.) Rather, "an actual, present controversy must be pleaded specifically" and "the facts of the respective claims concerning the [underlying] subject must be given." (5 Witkin, Cal. Procedure, *supra*, § 819, p. 275; see *City of Alturas v. Gloster* (1940) 16 Cal.2d 46, 48 [104 P.2d 810].)

In this case, as the Court of Appeal stated, a dispute exists between the parties over the constitutionality of Cotati Ordinance No. 680. And just as Owners' lawsuit itself was not the actual controversy underlying Owners' request for declaratory relief in federal court, neither was that lawsuit the actual controversy underlying City's state court request for declaratory relief. Rather, the actual controversy giving rise to both actions—the fundamental basis of each request for declaratory relief—was the same underlying controversy respecting City's ordinance.[5] City's cause of action therefore was not one arising from Owners' federal suit. Accordingly, City's action was not subject to a special motion to strike.

In view of our conclusion that City's cause of action did not arise from Owners' federal suit, we do not reach the anti-SLAPP statute's secondary

[5]Thus, as the trial court correctly noted, City's "action references the history of the enactment of Ordinance No. 680 . . . and then states that an actual controversy exists between plaintiff and defendants in that plaintiff contends that the ordinance is valid whereas defendants contend that the ordinance is void . . . . This described contention of the plaintiff is the exact contention made by the defendants in their first cause of action of the federal lawsuit . . . ." Unfortunately, the trial court went on to reason, fallaciously, that, since the two lawsuits reference the same underlying controversy, the second arose out of the first.

question whether City "established that there is a probability that [City] will prevail on the claim" (§ 425.16, subd. (b)(1)). In any event, while the parties in their briefs on the merits argued the point, neither the petition for review nor the answer to the petition for review requested that we address that issue.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., and Moreno, J., concurred.

**BROWN, J.**—I concur in the judgment. For the reasons offered in part C., the City of Cotati's suit did not arise from the owners' suit. (See also *Navellier v. Sletten* (2002) 29 Cal.4th 82, 98-100 [124 Cal.Rptr.2d 530, 52 P.3d 703] (dis. opn. of Brown, J.).) Accordingly, the majority's other grounds are dicta, which we need not address.

Baxter, J., and Chin, J., concurred.