**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT


GREENSPRINGS BAPTIST CHRISTIAN
FELLOWSHIP TRUST,

          Plaintiff - Appellee,

  v.

JAMES P. CILLEY; MARK A.
SCHMUCK; TIMMERMAN, CILLEY &
KOHLMANN LLP, a California limited
liability partnership,

          Defendants - Appellants.


No. 11-16586

D.C. No. 3:09-cv-01054-SC


MEMORANDUM[*]


Appeal from the United States District Court
for the Northern District of California
Samuel Conti, Senior District Judge, Presiding

Argued and Submitted February 14, 2013
San Francisco, California

Before: SCHROEDER, NOONAN, and MURGUIA, Circuit Judges.

In this diversity action for malicious prosecution, James P. Cilley, Mark A.

Schmuck and their law firm, Timmerman, Cilley & Kohlmann (collectively the

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Lawyers) appeal the ruling of the district court holding that Greensprings Baptist

Christian Fellowship Trust (Greensprings) had made a prima facie showing of

malice, so that it could proceed to trial.

We affirm.

The history of this litigation is recounted in two judicial orders:

On August 18, 2008, Chief Magistrate Judge James Larson examined the

complaint filed by the Lawyers on behalf of their clients, Robert Miller and

Barbara Miller, individually, and as parents of Molly Miller and Anne Miller.

Chief Magistrate Judge Larson concluded:

> As Elsie Turchen was dying she apparently wanted to do something for her greatgranddaughters, Molly and Anne. Molly was her granddaughter Penny's child, who had been given up for adoption. Anne was the child of Molly's adoptive parents. Elsie said in her letter that she had been too busy to do much for the girls. She wrote a letter to the girls' parents, Robert and Barbara. Would the gift of a house be all right with them? She had one in mind, and enclosed a photo. Two and a half weeks later, Elsie died.
>
> What ensued was a complicated legal tangle. Penny, Molly's birth mother, contested Elsie's will and sued in state court. The state lawsuit was settled.
>
> Molly and Anne's parents did not join in the lawsuit or make a claim against Elsie's estate. Greensprings was willing at first to make a donation to charities of their choice. Over several years, checks were written and re-written, sent back, replaced, and finally returned to the

Estate. Molly and Anne's parents ultimately received nothing from either Greensprings or Elsie's estate. They sued in this Court.

Plaintiffs claim two kinds of damages: forbearance to file a claim against Elsie's estate, and their liability for a pledge to Seabury Hall of $200,000. They argue that they gave up their opportunity to receive something from the Estate, in exchange for Greensprings' promise to donate to charities on their behalf. They argue that they promised a donation to Seabury Hall based on Greensprings' promise to them.

This Court concludes that none of this amounts to a cause of action. When Molly was adopted, her legal ties to Elsie were severed. Even if the will, which left her nothing, was invalidated, the law of intestate succession would also have given her nothing. Anne and her parents had no legal connection to Elsie. Even if Elsie's proposal in the letter amounted to a promise of a gift, the gift was never completed. The promise was not enforceable. There was no valid claim on that basis available to Plaintiffs against Elsie's estate. So the Plaintiffs' forbearance to file a claim against the Estate did not amount to consideration for Greensprings' promise to donate on their behalf. Their forbearance was worthless, since they had no viable claim against Elsie's estate. Their second claim, for their liability for the pledge to Seabury Hall, was not based on any reasonable reliance on a promise by Greensprings. The promise, if there was one, was to donate to charities, including Seabury Hall, but not to Plaintiffs. Plaintiffs never had possession or a promise of possession of any money.

Accordingly, Defendants' motions to strike and to dismiss pursuant to FRCP 12(b)(6) are granted, Plaintiffs' First Amended Complaint is dismissed. The motion for failure to join an indispensable party pursuant to FRCP 12(b)(7) is denied without prejudice. Plaintiffs shall take nothing on their complaint. Parties to bear their own costs. The Clerk shall close the file.

3

Three years later, the attorneys were still at it.  Reviewing what had been asserted, Judge Samuel Conti ruled on May 26, 2011 summed up the situation:

> If there were any doubts as to whether the Millers' causes of action were lacking in probable cause, Magistrate Judge Larson's order dismissing the initial complaint removed them. This order stated that the Millers must demonstrate that Anne and Molly were entitled to the $500,000 from Turchen, Turchen's estate, or the estate of Turchen's deceased son, Ward Anderson. Cilley believed that this order raised "*a hurdle which we cannot overcome*." Apr. 24, 2008 Letter at 3 (emphasis by Judge Conti). Cilley wrote that the challenges raised by Magistrate Judge Larson's order "cannot be overstated because it forms at least a part of the basis for most of our causes of action against the defendants in the First Amended Complaint." *Id*. Yet despite these considerations, the FAC was filed and ultimately dismissed with prejudice for failing to clear this hurdle. Because "an attorney may be held liable for continuing to prosecute a lawsuit discovered to lack probable cause," *Zamos*, 32 Cal. 4th at 960, this evidence is sufficient to satisfy Greensprings' burden on the issue of malice.
>
> In addition, the FAC included new allegations that Greensprings was part of a "conspiracy" to defraud Turchen, and that Greensprings agreed to make a $500,000 donation to charities identified by the Millers to avoid "increased scrutiny." *See Miller* FAC. Given that no such conspiracy is discussed in the numerous litigation documents submitted to the Court, the similarity between these allegations and allegations made in a superseded *Anderson* complaint, and Attorney Defendants' failure to submit documents tending to prove the existence of such a conspiracy, a reasonable fact finder could conclude they were lifted from the *Anderson* complaint and unsupported by probable cause. As such, this evidence is sufficient to show Attorney Defendants knew these allegations were not supported by probable cause when they made them.

Based on the above, Greensprings has put forward evidence supporting its allegation that Attorney Defendants brought claims against Greensprings that were unsupported by probable cause and legally untenable in light of the facts that were known by Attorney Defendants. This evidence is far from conclusive as to the ultimate issue of Attorney Defendants' liability for malicious prosecution, which is not yet before the Court. It is possible that a reasonable fact-finder could find Attorney Defendants were merely representing the Millers with the required zeal and without malice. However, Greensprings has conclusively cleared anti- SLAPP's "minimal merit" hurdle with this evidence. As such, the Court DENIES Attorney Defendants' Motion.  Appellant's ER 25-26.

Greensprings need show only the probability of success to secure a trial. *City of Cotati v. Cashman*, 52 P.3d 695, 700 (Cal. 2002). As the findings in the district court show, such probability exists. The district court therefore properly concluded that there was sufficient evidence to show, "Attorney defendants knew [their] allegations were not supported by probable cause when they made them." *See Zamos v. Stroud*, 87 P.3d 802, 806 (Cal. 2004).

AFFIRMED.

Appellee's motion for sanctions is DENIED.