Filed 2/10/15  Pickford Realty v. Ocean Towers Housing Corp. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PICKFORD REALTY, et al.,<br><br>     Cross-Complainants and<br>Respondents,<br><br>     v.<br><br>OCEAN TOWERS HOUSING<br>CORPORATION,<br><br>     Cross-Defendant and Appellant. | B254420<br><br>(Los Angeles County<br>Super. Ct. No. BC511043) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark Mooney, Judge.  Affirmed.

Enenstein Ribakoff LaVina & Pham, David Z. Ribakoff and Michael T. Rosenthal for Cross-Defendant and Appellant.

Rheinheimer Smigliani + Drake, Jane A. Rheinheimer and Suzanne L. Smigliani for Cross-Complainants and Respondents.

_____

After a lawsuit was filed against them, Pickford Realty, Ltd. and David Solomon filed a cross-complaint against Ocean Towers Housing Corporation (OTHC).  OTHC filed a special motion to strike the cross-complaint under Code of Civil Procedure section 425.16.[1]  The trial court denied the motion to strike, and OTHC appeals.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Anthony Mayes, trustee of the Miramar Trust, filed a lawsuit in June 2013 against Dorann Wolf, Pickford Realty, Solomon, and OTHC.  Mayes alleged that the trust had entered into a residential purchase agreement to purchase a unit being sold by Wolf in Ocean Towers, a building owned and managed by OTHC.  Mayes alleged that Solomon, a real estate agent employed by Pickford Realty, sent false and derogatory text messages concerning the transaction and its participants to another licensed salesperson working on OTHC properties.  Mayes sued Wolf for breach of contract; sought declaratory relief regarding and specific performance from Wolf and OTHC; and alleged trade libel/disparagement of property, tortious interference with contract, interference with prospective economic advantage, and defamation against Solomon and Pickford Realty.

Pickford Realty and Solomon cross-complained against OTHC, alleging tortious interference with a contractual relationship and interference with prospective economic advantage.  OTHC filed a motion to strike the cross-complaint as a strategic lawsuit against public participation (SLAPP).  The trial court denied the motion on the ground that the motion was untimely and the cross-complaint was not subject to section 425.16.  OTHC appeals.

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

## DISCUSSION

### I.     Standard of Review

OTHC argues that the trial court erred when it concluded that the cross-complaint was untimely and that it was not subject to an anti-SLAPP special motion to strike. We review the ruling de novo. (*Kurz v. Syrus Systems* (2013) 221 Cal.App.4th 748, 758.)

Section 425.16 provides that "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16. subd. (b)(1).) For purposes of the anti-SLAPP statute, an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Section 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. [Citation.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]. If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten*

(2002) 29 Cal.4th 82, 88 (*Navellier*).) These rules also apply to special motions to strike brought by cross-defendants. (§ 425.16, subd. (h).)

When causes of action contain allegations of both protected and unprotected conduct, they are considered to be mixed causes of action. Courts evaluate the principal thrust or gravamen of mixed causes of action to determine whether the anti-SLAPP statute applies. (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1219-1220.) "The anti-SLAPP statute does not apply where protected activity is only collateral or incidental to the purpose of the transaction or occurrence underlying the complaint." (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037.)

A special motion to strike under section 425.16 may be filed within 60 days after the service of the complaint or cross-complaint, or, in the court's discretion, at a later date. (§ 425.16, subds. (f), (h).)

## II. Timeliness

The trial court concluded that OTHC's special motion to strike was untimely. Service by mail of the cross-complaint appears to have been completed on September 24, 2013, when, as OTHC acknowledges, it signed and returned the acknowledgment of receipt of the cross-complaint and summons. (§ 415.30, subd. (c).) The special motion to strike was filed November 18, 2013, within the 60 days provided by section 425.16, subdivision (f). The trial court erred when it concluded that the motion was untimely filed.

In its reply brief, OTHC argues that the court's error in the evaluation of the timeliness issue itself warrants reversal without reference to the court's determination that the first prong of the anti-SLAPP test was not met, because the timeliness ruling "likely influenced the court's ruling that OTHC failed to establish that the cross-complaint arose from any protected activity or at least affected the amount of time the trial court devoted to analyzing the underlying merits of the motion." We have reviewed the transcript of the hearing on the special motion to strike and find no evidence

4

suggesting that the court failed to fully analyze the motion on its merits or was influenced by the timeliness determination; in any event, we independently review the court's ruling under a de novo standard of review.

## II. The Cross-Defendants Did Not Meet Their Burden

"The phrase 'arising from' in section 425.16, subdivision (b)(1), has been interpreted to refer to 'the act underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' and [to require] that such act must have been one done in furtherance of the right of petition or free speech. 'In short, the statutory phrase "cause of action . . . arising from" means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]" (*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1397-1398; see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-79 (*Cotati*).) "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

The trial court ruled that the first step in the anti-SLAPP analysis was not satisfied because the cross-defendants failed to make a threshold showing that the causes of action in the cross-complaint arose from protected activity. On appeal, OTHC argues that the trial court erred in this conclusion, and that the causes of action in the cross-complaint are mixed causes of action that allege both protected and unprotected activity. We conclude that OTHC has not shown that any of the causes of action in the cross-complaint arose from some act of OTHC that was taken in furtherance of the constitutional rights of petition or free speech.

5

The basic thrust of the cross-complaint is that OTHC harmed Solomon and Pickford Realty by excluding Solomon from Ocean Towers. Solomon and Pickford Realty, they alleged, had two active listings in Ocean Towers, and had done extensive business in the complex in the past. Pickford Realty and Solomon alleged that OTHC sent their counsel a letter stating that because of the text messages that Solomon sent he would not be permitted entry to Ocean Towers or to list or show units there. Solomon nonetheless set up a showing at the complex. When Solomon arrived at Ocean Towers, the doorman turned him away and called the police. Solomon was embarrassed and distressed that the other agent and his client arrived for the showing to find Solomon being questioned by the police.

Solomon and Pickford Realty alleged that OTHC intentionally interfered with them by denying Solomon access to Ocean Towers, prohibiting him from listing or showing units there, and subjecting him to police interrogation in the building lobby in the presence of colleagues and clients. OTHC, they alleged, had no grounds for denying Solomon entry to Ocean Towers.

In the first cause of action for interference with contract, Solomon and Pickford Realty alleged that OTHC's conduct was "the proximate cause of SOLOMON's inability to actively market his Ocean Towers listings, show his Ocean Towers listings to prospective buyers and/or tenants, and invite offers for his listings in Ocean Towers, as is contemplated by his written contracts with the owners."

In both causes of action, Solomon and Pickford Realty specifically identified their damages: they alleged that they were damaged by OTHC "denying CROSS-COMPLAINANTS access to the Ocean Towers complex, prohibiting CROSS-COMPLAINANTS from engaging in legitimate business activities, subjecting CROSS-COMPLAINANTS to police interrogation, interfering in CROSS-COMPLAINANTS' ability to service their listings, [and] denying CROSS-COMPLAINANTS their right to pursue their livelihood by obtaining or attempting to obtain additional listings in the Ocean Towers complex." In the first cause of action, they alleged that they were damaged by OTHC's interference with their "current and prospective contractual

6

relationships," and in their second cause of action they alleged they were damaged by OTHC's interference with their "current and prospective economic/contractual relationships." Finally, they alleged that they should receive punitive damages because OTHC knew they would be harmed by denying them access to Ocean Towers.

Here, the majority of the alleged wrongful conduct has nothing to do with constitutionally protected activity. There is nothing constitutionally protected about denying Solomon access to Ocean Towers or prohibiting him from listing or showing units there. OTHC argues that the interference claims are "expressly based" on OTHC's counsel's letter to Solomon's counsel stating that Solomon would be denied access and could not longer list or show units at Ocean Towers and on the subsequent call to the police department. OTHC contends that this protected activity was sufficient to bring the entire action within the scope of the anti-SLAPP statute. While OTHC's letter and the interrogation by police are mentioned in the cross-complaint, they are merely incidental to the unprotected conduct that forms the basis of Solomon and Pickford's claims. Solomon and Pickford Realty do not allege any harm from the OTHC letter itself or any respect in which the letter or the act of sending the letter constituted interference with contract or with prospective economic advantage. The alleged harm to them came from OTHC carrying through on its promise and actually denying Solomon access to Ocean Towers. Similarly, although Solomon and Pickford Realty do claim to have been harmed by the embarrassing interrogation resulting from Solomon's attempt to enter Ocean Towers, the protected activity—OTHC's telephone call to the police—is incidental to the core injury-producing activity alleged here, Solomon's exclusion from the complex. As the trial court noted, and we agree, "The gravamen of this cross-complaint is denial of access. I don't see that implicating the statute. It's not a right of free speech here. It is a business situation. The fact that the police were called, that's collateral and incidental to this denial of access."

As the protected conduct alleged in the cross-complaint is incidental to the unprotected conduct alleged in the cross-complaint, we cannot say that the cross-complaint's causes of action were based on an act in furtherance of right of petition or

7

free speech.  (*Cotati*, *supra*, 29 Cal.4th at p. 78.)  We conclude that the trial court properly determined that OTHC did not meet its burden of establishing that the cross-complaint was governed by section 425.16.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


ZELON, J.

We concur:


PERLUSS, P. J.


WOODS, J.