*1241 CORRIGAN, J.,
Dissenting. — In nay view, the applicability of Code of Civil Procedure section 340.6[1] is largely resolved by the language of the statute, which the majority discusses only sparingly.
Section 340.6 states, in relevant part: “An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year” after the plaintiff’s discovery of the wrongful act or four years after the date of the wrongful act. (Id., subd. (a).) “[A]rising in the performance of professional services” modifies “wrongful act or omission,” describing the type of conduct that triggers the statute. This court has construed similar language in the anti-SLAPP[2] statute. Section 425.16 authorizes a motion to strike for “[a] cause of action against a person arising from any act of that person in furtherance of the person’s right of petition or free speech . . . .” (Id., subd. (b)(1).) We explained that “arising from” in section 425.16 means that the cause of action must be based on conduct in furtherance of the defendant’s right of petition or free speech. (City of Cotati v. Cashman (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) Applying the same construction here, a cause of action subject to section 340.6 must be based on an attorney’s conduct in performing a professional service.
From a plain reading of the statutory language, I would hold that section 340.6 governs any claim against an attorney, except for actual fraud, that is based on the attorney’s wrongful conduct in performing professional services. It does not matter how the claim is specifically pleaded or what proof is ultimately necessary to support it. What matters is the nature of the alleged wrongdoing: Was the conduct logically encompassed in the attorney’s performance of professional services? If so, section 340.6 requires that any claim based on that conduct be brought within one year of discovery or four years of the conduct. If not, some other limitations period applies.
Legislative history is consistent with this interpretation. As the majority ably demonstrates, the Legislature’s intent in enacting section 340.6 was “to establish a limitations period that would apply broadly to any claim concerning an attorney’s violation of his or her professional obligations in the course of providing professional services regardless of how those claims were styled in the plaintiff’s complaint.” (Maj. opn., ante, at p. 1235, italics added.) To instill certainty and reduce legal malpractice premiums, the Legislature drafted section 340.6 to focus on the nature of the attorney’s alleged wrongdoing, rather than how it is labeled in a cause of action. (See maj. opn., ante, at p. 1236.)
*1242 I generally agree with the majority’s assessment of legislative intent. It goes astray, however, in defining the test for when section 340.6 applies. The majority recognizes that the Legislature sought to remove the limitation scheme’s dependence on how a claim is pleaded. (Maj. opn., ante, at p. 1236.) In place of “pleadings,” however, the majority would simply substitute “pleadings and proof.” The majority thus holds that applicability of the statute turns on “the conduct alleged and ultimately proven” (ibid., italics added) and extends only to “claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services” (id. at pp. 1236-1237, italics added). This formulation has no apparent basis in the statute’s language or legislative history. By focusing on “ultimatef]” or “necessar[y]” proof, the majority effectively narrows the class of claims to which section 340.6 applies. That is a line for the Legislature to draw, not this court.
Moreover, in all but the most straightforward malpractice cases, the majority’s rule will make it difficult or impossible for untimely claims against attorneys to be resolved before trial. How can one predict what proof will be necessary to support a claim before the plaintiff tries her case? Except for factual questions surrounding when a plaintiff has discovered injury or wrongdoing, there appears to be no other context in which the applicability of a limitations statute is governed by the plaintiff’s ultimate proof. A delay in resolving statute of limitations defenses cannot be squared with the legislative goals of providing certainty and reducing the costs associated with malpractice lawsuits (see maj. opn., ante, at p. 1236).
The greatest problem with the majority’s interpretation, however, is how little it differs from the pleadings-based triggers that section 340.6 replaced. Although couched in language of proof, rather than pleadings, the majority’s rule continues to elevate the form of the plaintiff’s cause of action over the substance of the defendant’s wrongful conduct. Application of the rule here shows why this is so. After the one-year limitations period in section 340.6 expired, Lee sued Hanley for breach of contract, breach of fiduciary duty, and related equitable violations. The majority concedes these claims are barred but concludes dismissal was improper because Lee might be able to plead a viable claim for conversion on remand. Thus, despite clear legislative intent “to eliminate the former limitations scheme’s dependence on the way a plaintiff styled his or her complaint” (maj. opn., ante, at p. 1236), the majority opinion suggests a plaintiff can avoid section 340.6 by labeling her claim a different way. To be sure, the majority gives assurances that the statute’s application will ultimately depend on the nature of a plaintiff’s proof, not just her pleading. However, if Lee can prove conversion without referring too much to Hanley’s professional violations, her claim would appear unbarred by section 340.6. Exactly how much a plaintiff’s proof can *1243 touch upon or concern an attorney’s professional obligations without triggering the statute is left unclear.
A straightforward interpretation of section 340.6 would avoid artful attempts at evasion and would allow untimely claims to be dismissed before expenses mount in discovery and trial. A straightforward reading of the statute makes clear that what matters is the nature of the wrongful conduct alleged. Specifically, to “aris[e] in the performance of professional services” (§ 340.6), the wrongful conduct must have some close and logical relationship to those professional services.[3]
Here, Lee hired Hanley to represent her in civil litigation. She paid him to do so, advancing fees and costs. The lawsuit settled, and Lee now alleges Hanley did not return a large portion of unused fees. The present dispute directly relates to whether Hanley acted wrongfully in keeping the money. Hanley was paid in advance for his performance of legal services. As the pending State Bar disciplinary action against him indicates, he arguably violated professional rules by failing to return the unused advances. Hanley’s alleged wrongful acts “ar[ose] in the performance of professional services” (§ 340.6) because they were closely and logically related to his service as Lee’s attorney. Accordingly, regardless of whether Lee could style her complaint some other way, I would uphold the judgment of the trial court finding her claims against Hanley barred by section 340.6.
Chin, L, concurred.

 All statutory references are to the Code of Civil Procedure.

 The acronym stands for strategic lawsuits against public participation. (See Canan & Pring, Strategic Lawsuits Against Public Participation (1988) 35 Soc. Probs. 506.)

 It seems unlikely that sexual battery or outright theft could ever be closely or logically connected to the performance of legal services. (See maj. opn., ante, at p. 1238.) A broader interpretation of the statute need not lead to such absurd results.