Filed 9/10/14  Widmann v. Sebastian CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RANDALL M. WIDMANN,<br><br>      Plaintiff, Cross-Defendant and<br>Appellant,<br><br>v.<br><br>STEPHANIE SEBASTIAN,<br><br>      Defendant, Cross-Complainant and<br>Respondent. | H039773<br>(Santa Clara County<br>Super. Ct. No. 112-CV-235008) |

Appellant Randall Widmann brought an action to recover fees for his legal representation of respondent Stephanie Sebastian.  When she cross-complained for breach of fiduciary duty and breach of contract, Widmann moved to strike her pleading as a Strategic Lawsuit Against Public Participation (SLAPP) under Code of Civil Procedure section 425.16.[1]  The superior court denied his motion, ruling that Widmann had failed to show that the cross-complaint arose from his petitioning activity.  On appeal, Widmann maintains that (1) Sebastian sued him "to curtail his petitioning activity—his filing suit against her for fees," and (2) she had no probability of prevailing on her cross-complaint.  We find no error and therefore affirm the order denying Widmann's anti-SLAPP motion.

_____

[1]  All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

*Background*

Widmann represented Sebastian in a lawsuit against her former employer, Affymetrix, and two of its employees (collectively Affymetrix), in which she alleged harassment and discrimination, retaliation, intentional infliction of emotional distress, constructive wrongful discharge, and related claims. On July 19, 2011, in the first of two written retainer agreements, the parties agreed that Widmann would provide services to Sebastian in two phases. "Phase One" was to consist of Widmann's efforts to "resolve the matter without the need for litigation." "Phase Two" would involve "filing an administrative claim with the Fair Employment and Housing Commission, receiving a Right to Sue letter and, thereafter, filing suit against the company and [the individual defendants]." In Phase One Widmann would charge $365 per hour. If Phase Two became necessary, then the parties were to "renegotiate the fee agreement to reflect a full or partial contingency."

By August 24, 2011, Affymetrix having made no settlement offer, Sebastian met with Widmann to discuss Phase Two. They agreed that Widmann would begin work on a complaint with the Commission, and he would receive 35 percent of the gross amount of any recovery, not including costs. Sebastian executed the new agreement on August 29, 2011 and delivered it to Widmann that morning.

According to Sebastian, on September 7, 2011 she learned that her claims against Affymetrix would be mediated. Mediation took place in December 2011, and in April 2012 they settled for $250,000.

Defendants paid the settlement amount in two checks. Widmann sent one of the two checks to Sebastian, and on April 27, 2012, he billed Sebastian for fees due in the amount of $87,500. According to Widmann's complaint, Sebastian refused to pay Widmann the full amount of the fees billed until, on October 26, 2012, she endorsed the second settlement check in the amount of $187,500. She then instructed Widmann to

2

disburse $100,000 to her and $13,420 to himself. The remaining amount, $74,080, remained in a trust account pending resolution of their dispute.

Widmann filed his complaint that day, October 26, 2012, alleging breach of contract, breach of the covenant of good faith and fair dealing, and failure to pay account stated. In addition to the $74,080, Widmann claimed unpaid late charges (at one percent per month) of $5,250, for a total of $79,330, plus prejudgment interest and late charges accruing after October 26, 2012.

In her answer Sebastian admitted the terms of the second agreement calling for a contingency fee, but she denied agreeing to a one-percent late charge.[2] In February 2013 she filed a cross-complaint, alleging breach of fiduciary duty, breach of contract, and professional negligence. The factual basis of Sebastian's pleading was her discovery on March 19, 2012 that Affymetrix had proposed mediation on August 24, 2011, in the afternoon of the day Widmann and Sebastian had discussed the necessity of moving to Phase Two.[3] Widmann, however, had not mentioned the mediation offer after receiving it, either in the second retainer agreement on August 26 or when Sebastian delivered her signed copy of that agreement on August 29. Yet in the afternoon of August 29, 2011, Widmann had responded to the mediation proposal, informing Affymetrix's counsel that Sebastian would mediate this matter "on two conditions." He added that he would

---

[2] The provision for a one-percent late charge was incorporated into the first agreement on July 19, 2011, but was not specifically mentioned in the second agreement on August 29, 2011.

[3] The letter from Affymetrix's counsel to Widmann stated in part, "I ask that you advise Ms. Sebastian that Affymetrix holds no ill will toward her and remains willing to work through her concerns in a productive manner—an endeavor hardly achievable through litigation. Mediation may offer a means for Ms. Sebastian's concerns to be expressed, addressed and resolved in an efficient and direct manner. If mediation is of interest to your client, please let me know; no doubt, you will comply with your ethical obligations to communicate to her the offer to mediate this dispute."

3

proceed with the filing of Sebastian's administrative claim, but would refrain from filing a complaint in superior court "pending the outcome of [the] mediation should [Affymetrix] still desire to engage in that process at this time."

Had she known on either date that Affymetrix had expressed a willingness to mediate, she "would not have agreed to move to a 'Phase Two' agreement" in which she accepted the contingency fee arrangement. She learned of the offer only on March 19, 2012, after requesting and receiving a copy of the e-mail correspondence between Widmann and counsel for Affymetrix. When she read the August 24, 2011 letter from Affymetrix proposing mediation, she realized that when Widmann accepted the Phase Two agreement, he knew that mediation "was a viable option, but failed to communicate such information to [her], instead letting her believe that litigation would be necessary, and a trial would almost certainly be necessary." Meanwhile, "[a]t no time" did Widmann begin work on a complaint with the Fair Employment and Housing Commission as he had stated he would in the Phase Two agreement.

Widmann moved to strike Sebastian's cross-complaint under section 425.16. He alleged in essence that "Sebastian admits that she has brought all three of her causes of action to thwart and in response to Widmann's protected activity. That is, Sebastian claims that she has been damaged because Widmann has sued her for recovery of the fees due him." Widmann further argued that it was "self evident" that Sebastian's causes of action were all "uncertain, remote and speculative." He asserted that she had neither admissible evidence supporting her claims nor "any damages or harm at this point as she is claiming that she has been damaged by virtue of being sued. . . . If Widmann is successful in recovering his fees, Sebastian has no claim at all as a matter of law. It is self evident that on this basis alone Sebastian's SLAPP Cross-Complaint is made of whole cloth and is designed sole[l]y for the purpose of thwarting Widmann in engaging in the protected activity of suing her for his fees. There is no question but [*sic*] that Sebastian

4

has filed her Cross-Complaint to get Widmann to either drop his claims and get paid nothing or to settle for a smaller than agreed to fee."

The superior court, however, denied Widmann's motion to strike, citing his failure to show that Sebastian's claims *arose from* his action against her.[4] Widmann then filed this timely appeal.

*Discussion*

*1. Scope of the Statute and Standard of Review*

Both parties appear to understand the nature of section 425.16 and the legislative intent underlying its enactment. "A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. ' "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." ' " (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1126.) Section 425.16 was enacted in 1992 to address the "disturbing increase" in the frequency of these meritless harassing lawsuits. (§ 425.16, subd. (a); see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 85, fn. 1; *Simpson Strong-Tie Company, Inc. v. Gore*, *supra*, 49 Cal.4th at p. 21.) It was the Legislature's finding "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." (§ 425.16, subd. (a).) The statute was thus designed to deter

---

[4] In the same order the court also denied Widmann's motion for summary judgment of his own complaint. On December 17, 2013, this court summarily denied Widmann's petition for writ of mandate challenging the denial of summary judgment. (H039821)

5

meritless actions that "deplete 'the defendant's energy' and drain 'his or her resources,' [citation], . . . ' ". . . by ending them early and without great cost to the SLAPP target" ' [citation]." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278; *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502.) The challenged cause of action may appear in a complaint, in a cross-complaint, or in other pleadings. (§ 425.16, subd. (h); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77 (*Cotati*).)

In evaluating a motion under the statute the trial court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Cotati, supra*, 29 Cal.4th at p. 76; *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 89.) We review an order granting or denying a motion to strike under section 425.16 de novo. (*Soukup v. Law Offices of Herbert Hafif, supra*, 39 Cal.4th at p. 269, fn. 3; *Oasis West Realty, LLC v. Goldman, supra*, 51 Cal.4th at p. 820.) As directed by the statute, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or the defense is based." (§ 425.16, subd. (b)(2).)

## 2. The "Arising Prong": Protected Activity

The first step of the section 425.16 analysis is to determine whether the challenged cause of action was one arising from protected activity. It is the burden of the party seeking the protection of the statute (the defendant, or, in this case, Widmann as cross-defendant) to show that the challenged cause of action falls within the statute.

6

(*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66 (*Equilon*);

accord, *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)  Accordingly,

the conduct at issue must fall within one of the four categories set forth in subdivision (e)

of section 425.16:  "(1) any written or oral statement or writing made before a legislative,

executive, or judicial proceeding, or any other official proceeding authorized by law; (2)

any written or oral statement or writing made in connection with an issue under

consideration or review by a legislative, executive, or judicial body, or any other official

proceeding authorized by law; (3) any written or oral statement or writing made in a

place open to the public or a public forum in connection with an issue of public interest;

or (4) any other conduct in furtherance of the exercise of the constitutional right of

petition or the constitutional right of free speech in connection with a public issue or an

issue of public interest."  (§ 425.16, subd. (e).)

*3.  Application of the "Arising From" Prong*

On appeal, Widmann first renews his argument that Sebastian's cross-complaint

arises from his petitioning activity.  As he reads the cross-complaint, Sebastian "has

expressly sued Widmann because he is suing her to obtain his fees. . . . This is self

evident not only from the allegations of her Cross-Complaint but also the fact that her

claims are barred as a matter of law."  According to Widmann, Sebastian has filed her

cross-complaint "to scare him off" from trying to collect his unpaid fees.

There is no dispute that Widmann's lawsuit meets the definition of "an act in

furtherance of [his] right of petition."  (§ 425.16, subd. (e).)  The question is rather

whether he has met his burden to show that Sebastian's cross-complaint *arises from* his

act of suing her for his fees.  We agree with the superior court that he has not met that

burden.

A claim "arises from" an act when the act " ' " forms the basis for the plaintiff's

cause of action . . ." ' " (*Equilon*, *supra*, 29 Cal.4th at p. 66; *Kolar v. Donahue, McIntosh*

*& Hammerton* (2006) 145 Cal.App.4th 1532, 1537.)  "As courts applying the anti-SLAPP

7

statute have recognized, the 'arising from' requirement is not always easily met."
(*Equilon, supra*, 29 Cal.4th at p. 66.) "California courts rightly have rejected the notion
'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the
rights of petition or free speech as long as suit was brought after the defendant engaged in
such an act, whether or not the purported basis for the suit is that act itself.'. . . [¶] To
construe 'arising from' in section 425.16, subdivision (b)(1) as meaning 'in response
to' . . . would in effect render all cross-actions potential SLAPP's. We presume the
Legislature did not intend such an absurd result." (*Cotati, supra*, 29 Cal.4th at p. 77.)
Accordingly, the Supreme Court has made it clear that "the mere fact that an action was
filed after protected activity took place does not mean the action arose from that activity
for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action
arguably may have been 'triggered' by protected activity does not entail [*sic*] that it is
one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is
whether the cause of action is *based on* the defendant's protected free speech or
petitioning activity." (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 89; *In re Episcopal
Church Cases* (2009) 45 Cal.4th 467, 477.)

Widmann continues to argue that it is "self-evident" that Sebastian's
cross-complaint is "directed at and arose from" his petitioning activity. He maintains that
Sebastian "alleged and admitted that she was damaged because Widmann was suing her
for his fees[--] that she was suing Widmann because he had filed suit against her to
recover her fees." That statement distorts and misrepresents the allegations of the
cross-complaint. Contrary to Widmann's assertion that Sebastian is "not claiming that
Widmann did something wrong in representing her," she is indeed claiming just that.
The gravamen of Sebastian's cross-complaint is that Widmann obtained her consent to
Phase Two, the agreement for legal representation on a contingency basis, by telling her
that litigation would be necessary and withholding from her the significant opportunity to
mediate her grievance against her employer. Thus, Widmann's assertion that she is not

8

suing for anything he did wrong is plainly incorrect. The reference in the cross-complaint to Widmann's claim for fees is the alleged *result*, not the gravamen, of the claimed wrong. Sebastian alleged that Widmann's misrepresentation of the status of her lawsuit caused her to sign the Phase Two contingency agreement, with the further consequence that she was charged "over $74,080.00 as part of the contingency arrangement." Widmann's confounding of Sebastian's allegations of breach and damage does nothing to strengthen his position.

Insisting, however, that Sebastian has "expressly sued" him because he sued her for his fees, Widmann relies on a series of admissions she made in her answer to his complaint and in her responses to his request for admissions. First, he notes, Sebastian admitted that their fee agreement called for him to receive 35 percent of the gross amount of any recovery she obtained. She also admitted that she settled her claims against Affymetrix for $250,000. On February 28, 2012, she sent him an e-mail requesting waiver of certain billed charges, "since you will be receiving 35% of the settlement." These admissions, Widmann contends, "are conclusive and cannot be contradicted by her."

There is nothing in these admissions that is relevant to the analysis of the first prong of Widmann's anti-SLAPP motion. All they establish is the history of the arrangement between the parties, which is not in dispute. Even the February 28, 2012 e-mail is not "telling," as Widmann suggests; Sebastian sent that message before she received the correspondence between him and Affymetrix's counsel and thereby discovered that Widmann had failed to tell her that mediation had been proposed before she signed the contingency agreement. Nor is Widmann's reliance on the "negative pregnant" principle of any assistance to him. He calls our attention to Sebastian's answer to his complaint, which (along with her answers to his request for admissions) he believes contains conclusive admissions that she breached the fee agreement. Nothing of the kind is stated in Sebastian's answer. As already discussed, Sebastian is complaining that

9

Widmann's conduct—his failure to disclose the mediation proposal, *not* his initiation of a lawsuit against her-- had the damaging effect of depriving her of $74,080 in settlement funds held by Widmann in the trust fund.

In any event, these asserted admissions, whether viewed as express or implied via the negative pregnant rule, are not germane to the allegations that Widmann breached his fiduciary duty to Sebastian in the course of representing her, but are more properly invoked in Widmann's litigation of his own complaint. We are not reviewing the denial of summary judgment on Widmann's action against Sebastian but are concerned only with whether Sebastian's allegations against him withstand his anti-SLAPP motion.

Widmann has offered no other ground for even an inference that the gravamen of Sebastian's cross-complaint was "the fact that Widmann is suing her." We therefore agree with the superior court that Widmann has failed to meet his initial burden to show that Sebastian's claims arose from—i.e., were "*based on*"-- his petitioning activity. (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 89.) In light of this conclusion, it is unnecessary to proceed to step two of the anti-SLAPP analysis.[5] (*Cotati*, *supra*, 29 Cal. 4th at pp. 80-81.) The section 425.16 motion was properly denied.

*Disposition*

The order is affirmed.

---

[5] We express no opinion regarding the likelihood of Sebastian's success in proving her claims at trial.

10

_____

ELIA, J.

WE CONCUR:


_____

PREMO, ACTING P.J.


_____

MIHARA, J.