Filed 5/27/22  Best Energy Solutions etc. v. State Air Resources Bd. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BEST ENERGY SOLUTIONS & TECHNOLOGY CORP., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STATE AIR RESOURCES BOARD, <br><br> Defendant and Appellant. | F082207 <br><br> (Super. Ct. No. BCV-20-102198) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  David R. Lampe, Judge.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Robert W. Byrne, Assistant Attorney General, Gary E. Tavetian, Gwynne B. Hunter, Ross H. Hirsch, Theodore A. McCombs, Deputy Attorneys General, for Defendant and Appellant.

Larson, Stephen S. Larson, Steve E. Bedsoe, and Andrew J. Bedigian for Plaintiff and Respondent.

-ooOoo-

Plaintiff Best Energy Solutions & Technology Corp. (Best Energy) filed a complaint against the State Air Resources Board (ARB) seeking a declaratory judgment

stating it had complied with California's alternative diesel fuel regulation in obtaining certification of a biodiesel additive called BC-EC1c. ARB responded by filing an anti-SLAPP motion pursuant to Code of Civil Procedure section 425.16.[1] ARB contends the declaratory relief action arose from protected activity and Best Energy failed to establish a reasonable probability it would prevail on its claim.

The trial court denied the motion. Based on our independent review of the record, we agree with the trial court and conclude Best Energy's declaratory relief action did not arise from activity "in furtherance of [ARB's] right of petition or free speech." (§ 425.16, subd. (b)(1).)

We therefore affirm the order.

## FACTS

In December 2014, ARB released documents to the public that included "newly proposed regulations addressing alternative diesel fuels." (*POET, LLC v. State Air Resources Bd.* (2017) 12 Cal.App.5th 52, 66.) The alternative diesel fuels regulations (ADF Regulation or ADF Reg.) are set forth in sections 2293 through 2293.9 and appendix 1 of subarticle 2, "In-use Requirements for Pollutant Emissions Control," of title 13 to the California Code of Regulations. (*POET, LLC*, at p. 66, fn. 11.) The ADF Regulation's "purpose is 'to establish a comprehensive, multi-stage process governing the commercialization of alternative diesel fuels (ADF) in California.' " (*Ibid.*) In *POET, LLC*, this court concluded that the ADF Regulation was not tainted by ARB's violation of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) in connection with its 2015 adoption of a low carbon fuel standards regulation. (*POET, LLC, supra*, at p. 93.)

---

[1] A "SLAPP" is a strategic lawsuit against public participation and a special motion to strike under section 425.16 is referred to as an anti-SLAPP motion. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).) Unlabeled statutory references are to the Code of Civil Procedure.

"Biodiesel" is a type of alternative diesel fuel recognized by the ADF Regulation. (ADF Reg., § 2293.2, subd. (a)(2).) It is derived from vegetable oils or animal fats. (*Ibid*.) Biodiesel can reduce greenhouse gas emissions but potentially can increase oxides of nitrogen (NOx) emissions, a smog precursor associated with health and environmental harm. As a result, the ADF Regulation provides that certain biodiesel blends may be sold commercially only if NOx control mechanisms are applied. (ADF Reg., § 2293.5, subd. (c).)

Best Energy is a research and development company and a supplier, producer and distributor of (1) petroleum additives and fuels and (2) engine and petrochemical technologies. Its founder and president is George Sturges. In connection with developing a biodiesel additive called BC-EC1c, Best Energy began communicating with ARB about certification in October 2017.

After discussions, Best Energy requested approval and certification of the BC-EC1c as an emissions equivalent additive under appendix 1 of the ADF Regulation. Southwest Research Institute (SwRI) prepared the initial test protocol and submitted it to ARB in February 2018. SwRI submitted the final test protocol on March 7, 2018. ARB's staff found the final submission complete and approved it on April 11, 2018. Later in April, SwRI began testing BC-EC1c using the approved protocol. After the testing was complete, SwRI prepared a final report and, in May 2018, submitted it to ARB.

On June 5, 2018, ARB issued Executive Order G-714-ADF05 certifying BC-EC1c at a treat rate of 100 parts per million. The executive order stated in part:

> "The candidate fuel was properly tested in accordance with Appendix 1(a)(2)(F) of the ADF regulation. The candidate fuel emissions tests showed NOx emissions were equivalent and a particulate matter emissions reduction of 18 percent compared to the reference fuel (ARB diesel). The candidate fuel emissions satisfied all of the requirements under Appendix 1 (a)(2)(G) of the ADF regulation.

"NOW, THEREFORE, (IT IS ORDERED AND RESOLVED) that the additive BC-EC1c is approved and certified pursuant to Appendix 1 (a)(2)(H) of the ADF regulation as an emissions equivalent additive for use with biodiesel blends B20 and below or for use with biodiesel blendstock when applied in accordance with [the conditions specified in this executive order]." (Boldface and underlining omitted.)

The executive order also stated ARB reserved the right to review the order and the certification to assure the certified fuel met the standard and procedures of the ADF Regulation.

The day after the executive order was issued, California Fueling, LLC questioned the legitimacy of the testing of Best Energy's additive, claiming that it had insider information about a problem in the chain of custody of the additive tested. Andrew V. Jablon of RPB, LLP, acting on behalf of its client California Fueling, LLC, sent ARB a September 6, 2018, letter expressing concerns about the certification of Best Energy's additive. Best Energy describes California Fueling, LLC as its only market competitor.

ARB initiated an investigation into the concerns raised. Its investigation sought to verify whether the test fuels used to conduct the certification testing of Best Energy's additive were the same fuels represented in the test protocol that ARB's staff had approved. The investigation resulted in ARB's staff recommending ARB conclude that (1) the same fuels had been used and (2) Executive Order G-714-ADF05 was valid and would remain in effect.

On October 16, 2018, an attorney from ARB's legal office sent Jablon a letter describing the actions taken by ARB to follow up on the concerns raised. The letter stated: "Staff's investigation uncovered no evidence of deficiencies in adherence to chain of custody requirements or any other part of the executive order approval process. Staff confirmed that the evidence continues to support the conclusion that the certification fully met the requirements of the ADF regulation." As a result, the letter "concluded that the evidence does not support any modification to that Executive Order … or other further action related to that order."

4.

ARB's October 16, 2018 letter also stated that Jablon's "letter contains several factual inaccuracies that your other subsequent communications continue to repeat and expand upon." The letter then explained those inaccuracies. For example, a concern expressed by a member of ARB's staff about a typographical error in the executive order had been described by Jablon as a concern about the chain of custody.

Also on October 16, 2018, ARB sent Best Energy's president an e-mail stating ARB's investigation had been completed and found nothing that would change the executive order issued for Best Energy's additive. That e-mail, however, did not close ARB's inquiry into certified biodiesel additives.

In late 2018 or early 2019, ARB contracted with the Center for Environmental Research and Technology at University of California, Riverside (CE-CERT) to conduct emissions testing of the additives of Best Energy and its competitor, California Fueling, LLC. The stated objectives of the project were to (1) confirm the two additives met existing regulatory requirements for certification, (2) broadly examine the efficacy of additives in reducing NOx emissions from diesel blends containing 20 percent biodiesel, and (3) determine whether ARB's existing certification requirements ensured NOx mitigation with biodiesel additive packages.

When Best Energy learned of the CE-CERT testing, it told ARB its view that the new tests could not confirm or replicate the prior results for many reasons, including the new tests would necessarily use different fuels, with different physical properties, from different geographical sources, and produced with different manufacturing processes.[2] In addition, Best Energy was doubtful that a laboratory with no track record of testing alternative diesel fuels could confirm the testing performed by SwRI.

---

[2]    For instance, Best Energy alleges that the testing performed by SwRI used a reference diesel fuel with a cetane number of 49 and the testing performed by CE-ERT used a cleaner burning diesel fuel with a cetane number of 53.

5.

On March 29, 2019, ARB issued an amended order, Executive Order G-714-ADF05A, modifying the certified treat rate for BC-EC1c to 20 parts per million, which corrected a clerical error that had resulted in the original certification at 100 parts per million.

On October 31, 2019, the results of the CE-CERT testing were released. ARB's letter to Best Energy's president attached a summary of the testing results and stated the testing showed Best Energy's "certified additive, BC-EC1c, failed to effectively mitigate to the regulatory standard." The letter concluded by stating that, "in addition to sending you this letter and sending similarly situated applicants for other certified additives similar letters, I have asked [ARB's] staff to issue a public product alert to notify interested stakeholders that we are working to develop appropriate action to address issues with potential ineffectiveness of these additives."

The October 31, 2019 product alert stated, among other things, that the ARB certified NOx mitigation additives could continue to be used to comply with the ADF Regulation's NOx mitigation requirements. It also advised that, to provide regulated parties with time to transition to other compliance strategies, any changes to existing certifications would not be effective before January 1, 2020.

In February 2020, ARB issued an administrative subpoena duces tecum to Best Energy in connection with an investigation into whether Best Energy complied with the ADF Regulation and, more broadly, why BC-EC1c was shown effective in the certification testing yet failed to mitigate NOx emissions in the CE-ERT testing. A declaration of an ARB investigator stated that, to further the investigation, it was necessary to review Best Energy's records related to BC-EC1c.

**PROCEEDINGS**

In September 2020, Best Energy filed a complaint for declaratory relief against ARB. The complaint alleged an actual controversy had arisen between Best Energy and ARB concerning their respective rights and duties with respect to the executive orders

ARB issued for BC-EC1c.  The complaint alleged that Best Energy "complied with the ADF Regulation in obtaining the Executive Order, and asks this Court to declare as such."  The prayer for relief requested "a declaration, pursuant to Code of Civil Procedure § 1060, that Best [Energy] complied with the ADF Regulation in obtaining its certification for BC-EC1c."  No other relief, such as damages or an injunction, was requested.

To demonstrate the existence an actual controversy, the complaint alleged that ARB (1) launched an investigation against Best Energy to determine whether Best Energy complied with the ADF Regulation, (2) contracted with CE-CERT to conduct emissions tests, (3) released the results of the testing in the October 31, 2019 product alert, and (4) could potentially issue a notice of violation, decertify the additive, or both.  The complaint also alleged the investigation was initiated in bad faith and without good cause and the investigation was likely "to distract from [ARB's] failure to draft and implement an ADF Regulation consistent with the stated purpose and goals of the ADF Regulation."

ARB responded to the complaint by filing an anti-SLAPP motion.  In December 2020, after an opposition and reply were filed, the trial court held a hearing on the motion.  At the start of the hearing, the court announced its tentative ruling to deny the motion and stated the gravamen of the case did not relate to protected activity, statements, or communications of ARB's staff and, instead, sought an adjudication related to ARB's investigation and to its interpretation of its regulations.  The court then heard argument from counsel and took the matter under submission.

After the hearing, the trial court denied ARB's anti-SLAPP motion.  The court's signed order stated that "the gravamen of the case is a challenge to the lawfulness of [ARB's] administrative actions, not any claim of right arising from [ARB's] protected activity."  ARB filed a timely appeal.

7.

In May 2022, ARB filed a notice of related case stating it had filed an enforcement complaint against Best Energy and its principal, George Sturges, in the Sacramento County Superior Court. The existence of an enforcement action does not affect the merits of this appeal.

## DISCUSSION

### I. BASIC PRINCIPLES

Section 425.16 provides an expedited procedure for dismissing lawsuits filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition. (§ 425.16, subd. (a).) Subdivision (b)(1) of section 425.16 provides:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

This provision creates a "two-step inquiry" for resolving anti-SLAPP motions. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 317.) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) Alternatively, if the defendant fails to demonstrate that any of the challenged claims for relief arise from protected activity, the court properly denies the motion to strike without addressing the probability of success (the second step). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81 (*Cashman*); *Verceles v. Los Angeles United School Dist.* (2021) 63 Cal.App.5th 776, 784.)

Appellate courts review de novo the grant or denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) Under this standard of review, appellate courts "exercise independent judgment in determining whether, based on our own review of the record, the challenged claims

8.

arise from protected activity." (*Ibid.*)  Appellate courts also may consider affidavits addressing the facts upon which liability is based.  (§ 425.16, subd. (b)(2).)

## II.    CLAIM ARISING FROM PROTECTED ACTIVITY

The trial court determined Best Energy's claim for declaratory relief did not arise from ARB's protected activity.  ARB contends the court erred in making this determination.  As explained below, the trial court properly concluded Best Energy's claim did not arise from protected speech or petitioning activity.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park*, *supra*, 2 Cal.5th at pp. 1062-1063; *Bonni*, *supra*, 11 Cal.5th at p. 1009.)  "The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884, original italics.)

An anti-SLAPP motion need not challenge an entire cause of action as pleaded in the complaint.  (*Bonni*, *supra*, 11 Cal.5th at p. 1010; *Baral*, *supra*, 1 Cal.5th at p. 382.) Instead, "courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, at p. 1010; see *Baral*, at p. 395.)  Stated another way, to determine if a particular claim arises from protected activity, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063.)

9.

A.     Protected Activity

In this appeal, before considering "each act or set of action supplying a basis for relief" (*Bonni*, *supra*, 11 Cal.5th at p. 1010), we consider the acts ARB contends are protected activity.  A "defendant's burden is to identify what acts each challenged claim rests on and *to show how those acts are protected under a statutorily defined category of protected activity*." (*Id*. at p. 1009.)  Those categories are set forth in subdivision (e) of section 425.16, which states:

> "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) *any written or oral statement or writing made in connection with an issue under consideration or review by* a legislative, *executive*, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.)

These statutory categories were designed to "provide objective guidelines that lend themselves to adjudication on pretrial motion." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.)  A moving party can meet its burden by demonstrating that the act or set of acts underlying the plaintiff's claim for relief fits one of the categories in section 425.16, subdivision (e).  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

ARB contends its investigation into Best Energy's additive and the release of the October 31, 2019 product alert are protected activities.  We conclude the product alert is a "written … statement … made in connection with an issue under consideration or review by [an] executive … body" and, therefore, qualifies as a protected activity under subdivision (e)(2) of section 425.16.  We also conclude ARB was authorized by law to conduct its internal investigation and further conclude the investigation and statements made during the course of the investigation qualify as protected activities.  Best Energy's

10.

counsel essentially conceded these conclusions at oral argument. (See *Guarino v. County of Siskiyou* (2018) 21 Cal.App.5th 1170, 1181 [county's internal investigation into plaintiff's wrongdoing was an official proceeding authorized by law and any statements made before or in connection with that investigation arose from protected activity].)

B.     Acts Providing the Basis for the Claim for Relief

Having identified the activities ARB contends are protected by section 425.16, we next examine "each act or set of acts supplying a basis for relief." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)  The identification of Best Energy's claims for relief is relatively straightforward because there is only one, narrowly drawn claim for relief in its complaint.  The prayer for relief seeks "a declaration … that Best [Energy] complied with the ADF Regulation in obtaining its certification for BC-EC1c" and nothing more.

The activity that provides the basis for the declaratory relief is summarized by the allegation that Best Energy "complied with all the requirements of the ADF Regulation." Thus, the allegations focus on Best Energy's activities—not ARB's.  Best Energy provided a more specific description of its compliance activities by alleging it (1) regularly checked in with ARB during the certification process to ensure that the fuels and protocol it used in its certification testing fully complied with applicable regulations; (2) submitted all necessary information regarding the chain of custody and physical properties of the fuels used in testing; (3) received ARB approval for its test protocol, including its fuel sources, fuel quality results, emissions test procedures, quality assurance procedures, additive composition, and additive treat rates; (4) submitted its test schedule for ARB's review and approval one week in advance of testing; and (5) undertook the testing only after receiving ARB's approval of the test schedule.  In short, the allegations that form the basis for relief are that Best Energy did everything right in accordance with the ADF Regulation, not that ARB did anything wrong.

Best Energy's complaint also included allegations designed to satisfy section 1060's requirement that an "actual controversy" exists between the parties.  To show an

11.

actual controversy existed, Best Energy alleged that ARB launched an investigation into whether Best Energy complied with the ADF Regulation; ARB did not follow its own regulation in conducting the investigation; ARB issued a product alert on October 31, 2019; and ARB potentially could issue a notice of violation, decertify the additive, or both. Earlier we concluded that ARB's investigation and the issuance of the product alert qualified as protected activity. Here, we must resolve whether those protected acts "supply the basis for" the claim for declaratory relief. (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

We reject ARB's argument that its protected investigation and issuance of a product alert provide the basis for Best Energy's claim for declaratory relief. Best Energy can prove its claim and obtain a declaration that it complied with the ADF Regulation without addressing ARB's investigation or the product alert. ARB's investigation and issuance of the product alert occurred *after* Best Energy had completed the certification process. As a result, ARB's postcertification activity in conducting that investigation and in issuing the product alert is not the basis for Best Energy's claim for a declaratory judgment stating that its precertification actions complied with the ADF Regulation.

We recognize the complaint includes allegations about ARB's postcertification protected activity to show the existence of an "actual controversy." (§ 1060) The legal question presented is whether that activity is part of the "*grounds for relief*." (*Baral*, *supra*, 1 Cal.5th at p. 395.) This question can be restated as whether ARB's protected activity supplies *an element* of the claim for declaratory relief. (*Park*, *supra*, 2 Cal.5th at p. 1063.) To resolve this issue, we turn to *Cashman*, *supra*, 29 Cal.4th 69, a case in which an anti-SLAPP motion was brought to strike a claim for declaratory relief.

In *Cashman*, the owners of mobilehome parks had filed a federal lawsuit against the city challenging its rent stabilization ordinance. (*Cashman*, *supra*, 29 Cal.4th at p. 71.) Subsequently, the city filed a complaint a state court action containing a cause of

action for declaratory relief. (*Id*. at p. 72.) The complaint alleged an actual controversy had arisen between the city and the owners relative to their respective rights and duties under the rent stabilization ordinance. (*Ibid*.) The city requested a judgment " 'declaring the respective rights and duties of the parties under the ordinance in question and that the ordinance is constitutional, valid, and enforceable.' " (*Ibid*.) The owners responded to the state court action by filing an anti-SLAPP motion. (*Ibid*.) The trial court granted the motion and the appellate court reversed. (*Id*. at p. 73.) The Supreme Court affirmed the reversal, concluding the city's cause of action for declaratory relief arose out of the challenged ordinance rather than from the owners' federal lawsuit, which was a protected petitioning activity. (*Id*. at pp. 80–81.)

In *Cashman*, the Supreme Court addressed the question of "[w]hat activity or facts underlie the City's cause of action for declaratory relief." (*Cashman*, *supra*, 29 Cal.4th at p. 79.) The court recognized that the " 'basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject.' " (*Ibid*.) The owners argued the only basis for alleging an actual controversy existed was the fact they had filed a federal lawsuit, an act protected by the anti-SLAPP statute. (*Ibid*.) The city countered this argument by asserting "that Owners' federal court action informed City of the existence of an actual controversy justifying declaratory relief, not that Owners' federal action, itself, *constituted* that controversy." (*Ibid*.) The Supreme Court agreed with the city's argument and concluded the actual controversy was the constitutionality of the ordinance and that controversy was a proper subject for declaratory relief. (*Ibid*.)

In the present case, we conclude ARB's investigation and its product alert (like the owners' federal lawsuit in *Cashman*) informed Best Energy of the existence of an actual controversy, but neither the investigation nor the product alert themselves constitute the controversy. This is not a lawsuit where Best Energy seeks to impose liability on ARB or its employees for statements made, or acts done, during the course of ARB's investigation. For instance, Best Energy is not claiming damages because the product

13.

alert was defamatory or wrongfully interfered with a prospective business advantage. (Cf. *Guarino v. County of Siskiyou*, *supra*, 21 Cal.App.5th at p. 1182 [Guarino attempted to impose liability on individual members of the county's board of supervisors for votes related to investigation into complaints Guarino had created a hostile work environment for county employees].) Instead, the controversy is limited to whether Best Energy complied with the ADF Regulation. Consequently, just as *Cashman* concluded the city's declaratory relief action regarding the constitutionality of the city's ordinance did not arise from the owners' federal lawsuit, we conclude Best Energy's declaratory relief action regarding its compliance with the ADF Regulation did not arise from ARB's investigation or product alert.[3]

Consequently, the trial court correctly denied the anti-SLAPP motion on the ground that Best Energy's claim for declaratory relief was not based on an act in furtherance of ARB's right of petition or free speech.

## DISPOSITION

The order denying ARB's anti-SLAPP motion is affirmed. Respondent shall recover its costs on appeal.

FRANSON, J.

WE CONCUR:


DETJEN, ACTING P. J.


MEEHAN, J.

---

[3] We note that Best Energy's declaratory relief action may have been *in response to* ARB's investigation and product alert, but our Supreme Court has determined the phrase "arising from" in section 425.16, subdivision (b)(1) does not mean "in response to." (*Cashman*, *supra*, 29 Cal.4th at p. 77.)

14.