Filed 12/19/24  Garcia v. 14322 Corby Ave. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| ELIZABETH GARCIA, | B331226 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23NWCV00256) |
| v. | |
| 14322 CORBY AVE., LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Lee W. Tsao, Judge.  Reversed.

Buchalter, Robert M. Dato; Tomassian, Inouye & Grigorian, Serge Tomassian, and Talin Grigorian for Plaintiff and Appellant.

Deldar Legal and P. David Cienfuegos for Defendant and Respondent.

Plaintiff and appellant Elizabeth Garcia appeals from an order granting defendant and respondent 14322 Corby Ave., LLC's (Corby) special motion to strike Garcia's complaint under Code of Civil Procedure[1] section 425.16 (the anti-SLAPP statute). Corby asserted the entirety of Garcia's complaint arose from protected activity because it was based on a prior litigation in which Corby obtained a default judgment against Roberto and Angelina Abutin (the Abutins). The subject of the prior lawsuit was the amount owed on a note and deed of trust secured by real property between the Abutins and Corby's predecessor-in-interest Banc of California (Banc). Corby sought to apply a default interest rate based on the Abutins' transfer of the property to Garcia in 2005. However, Corby did not name Garcia as a defendant in the prior lawsuit, and Garcia had no notice of the action until Corby filed a notice of default in 2022 and threatened foreclosure.

In response, Garcia sued Corby and the Abutins, alleging various causes of action based on Corby's calculation of the amount due on the note and the applicability of the default interest rate. The trial court granted Corby's anti-SLAPP motion. It found all of Garcia's claims arose from protected activity, specifically, the prior litigation, and that her claims were barred by the litigation privilege.

For the reasons stated below, we reverse.

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Abutins' purchase of the property and transfer to Garcia

In March 2004, the Abutins obtained a $515,000 loan from Quaker City Bank (Quaker) to purchase a multi-family income property (the Property) secured by a note and deed of trust. In August 2005, the Abutins agreed to sell the Property to Garcia and her late husband through a quitclaim deed. Under the purchase agreement, Garcia agreed to make the mortgage payments directly to the lender which she did for 14 years.

The original loan was obtained from Quaker, but Garcia's checks were made payable to Banco Popular per the loan agreement. The record does not specify when Banco Popular transferred the loan to Banc. However, by February 2019, Garcia wrote a check to Banc, and a notice of deed on March 1, 2019, listed Banc as the new beneficiary.

Despite the 2005 sale to Garcia, the quitclaim deed evidencing the transfer was not recorded until April 24, 2018. Thereafter, on March 1, 2019, Banc recorded a notice of default for over $366,000 on the Property, citing the unauthorized transfer to Garcia. In calculating the amount owed, Banc did not apply a default interest rate under the loan agreement. In response to the default, Garcia told Banc that she was ready to pay off the loan in full, pending receipt of an accurate payoff demand and accounting.

While Garcia was waiting to receive a revised and accurate pay off demand and accounting, Banc sold its interest in the note and deed of trust to Corby on March 29, 2019.

In May 2019, Corby provided Garcia and the Abutins with a "corrected" payoff statement, which calculated interest at a

default rate dating back to September 2005. In June 2019, Corby recorded a notice of default for $1,499,010.53, which included the additional interest.

In July 2019, Corby communicated to the Abutins and Garcia a payoff demand of $1,517,752.93, nearly three times the original loan amount. In October 2018, Corby's counsel sent a letter to Garcia's counsel with a revised payoff demand of $1,005,316.19, nearly one-third less than Corby's previous demand and nearly twice as much as the original loan amount. In December 2019, Corby sent another letter to Garcia's counsel, accusing the Abutins of colluding with Garcia to commit fraud and threatening both with civil and criminal liability for the alleged mortgage fraud.

## II.    Corby's first lawsuit against Garcia and the Abutins

In February 2020, Corby sued Garcia and the Abutins, alleging causes of action for fraud and judicial foreclosure. Garcia filed a motion to strike and demurrer to the complaint. Garcia also sought production of records from Banc, requesting all documents regarding mortgage payments made, the accounting, and all documents related to the assignment to Corby. Before the merits of any of these filings could be heard, Corby requested a dismissal of the entire action without prejudice, which was granted.

## III.    Corby obtains a default judgment in a second lawsuit against the Abutins only

In December 2021, Corby filed a second action for declaratory relief, naming only the Abutins as defendants. Garcia had no notice of the second lawsuit. On March 24, 2022, the trial court entered default judgment against the Abutins.

4

The default judgment declared: "the September 24, 2005 transfer of the Property by [the Abutins] was in violation of the terms of the [n]ote and [d]eed of [t]rust" and "based on the terms of the [n]ote and [d]eed of [t]rust, [Corby] is entitled to default interest owed according to the [n]ote and [d]eed of [t]rust from the date of the September 24, 2005 transfer to the present."

At the time default judgment was entered, Corby was aware that Garcia was the owner of the property. In November 2022, Corby recorded another notice of default for $1,434,811.31.

## IV. The present lawsuit

In January 2023, Garcia sued Corby and the Abutins, alleging six causes of action: (1) declaratory relief; (2) injunctive relief; (3) accounting; (4) financial elder abuse; (5) negligent infliction of emotional distress; and (6) intentional infliction of emotional distress. The principal thrusts of Garcia's complaint are the calculation and determination of the amount owed, the interpretation of the subject loan documents and to prevent Corby from foreclosing on the property.

Garcia's declaratory relief cause of action alleges Corby improperly applied a default interest rate. This theory also seeks judicial declarations of the correct payoff amount and the parties' rights before the foreclosure of the Property. Her second cause of action for injunctive relief seeks to prevent the wrongful sale of the Property, arguing that if the sale proceeds, she will suffer irreparable harm without an adequate legal remedy. Garcia's third cause of action for an accounting seeks to determine the accurate amount owed under the note and deed of trust. Her fourth cause of action for financial elder abuse alleges that Corby took advantage of her age by demanding an inflated amount, threatening criminal prosecution, and secretly obtaining a

5

default judgment to leverage the Property.  Garcia's fifth cause of action for negligent infliction of emotional distress alleges Corby's negligent and malicious actions, including misrepresenting the debt owed and threatening baseless criminal prosecution, caused her severe anxiety and distress over the potential loss of her property.  Her sixth cause of action for intentional infliction of emotional distress alleges Corby's intentional, reckless, and malicious actions caused her severe distress over the potential loss of her property and threat of incarceration.

## V.    Corby's anti-SLAPP motion

Corby moved to strike Garcia's entire complaint under section 425.16 on the ground that Garcia's claims arose from the underlying actions, which constituted protected activity under the anti-SLAPP statute.  Corby also argued Garcia could not show any probability of prevailing because her causes of action were barred by the litigation privilege.  (Civ. Code, § 47, subd. (b).)

Garcia opposed the motion, arguing Corby lacked the capacity to defend the action since its corporate status was suspended by the Franchise Tax Board and that Corby's miscalculation of the amount due and misinterpretation of the loan documents in applying the default interest did not arise from acts in furtherance of Corby's rights of petition or free speech.

The trial court granted the motion, finding Garcia's claims arose from protected activity, specifically, Corby's complaints in the first and second lawsuit, and the default judgment obtained in the second lawsuit.  The trial court also agreed with Corby that its actions were protected by the litigation privilege. It rejected Garcia's claim that she was a necessary party in the

6

second lawsuit, finding that Garcia was not a borrower and therefore her presence was unnecessary in interpreting the terms of the note.

Garcia appealed.

## DISCUSSION

### I.     Standard of review and governing law

We review the grant of an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

Section 425.16 sets forth "a two-step process for determining whether an action is a SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) "First, the defendant must show 'that the challenged cause of action is one arising from protected activity . . . " . . . by demonstrating that the act underlying the . . . cause fits [within] one of the categories spelled out in section 425.16, subdivision (e)." ' [Citation.] If the defendant makes that showing, the burden shifts to the plaintiff to 'demonstrate[] a probability of prevailing on' the merits of their cause. [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute . . . is . . . subject to being stricken.' " (*Bowen v. Lin* (2022) 80 Cal.App.5th 155, 160 (*Bowen*).)

"We independently review a trial court's decision to grant or deny an anti-SLAPP motion. [Citation.] When undertaking that review, ' "[w]e consider 'the pleadings . . . and supporting and opposing affidavits . . . upon which the liability or defense is based' " ' [citation], but 'do[] not weigh evidence or resolve conflicting factual claims' [citation]. Instead, we limit our inquiry 'to whether the plaintiff has stated a legally sufficient [cause of action] and made a prima facie factual showing sufficient to sustain a favorable judgment.' [Citation.] We 'accept[] the

7

plaintiff's evidence as true, and evaluate[] the defendant's showing only to determine if it defeats the plaintiff's [cause] as a matter of law.' [Citation.] Causes of action ' "with the requisite minimal merit may proceed." ' " (*Bowen, supra,* 80 Cal.App.5th at p. 161.)

## II. Not all of Garcia's causes of action arise from protected activity

Corby asserts each of Garcia's causes of action arises from protected activity as they each stem from Corby's constitutionally protected right of free speech in its litigation against Garcia and the Abutins. Garcia responds that her causes of action arise from Corby's miscalculation of the interest rate under the note and deed of trust, which does not arise from protected petitioning activity. For the reasons stated below, we agree with Garcia.

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. . . . 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*).) Section 425.16, subdivision (e) defines an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " as: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding

8

authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Here, Garcia has consistently asserted throughout this litigation that the "principal thrust" of her complaint "is the calculation and determination of the amount owed and the interpretation of the terms of the subject loan documents." Thus, at first glance, the alleged conduct that Garcia seeks to redress in this lawsuit is Corby seeking a determination of its rights under the note and deed of trust—the subject of the prior lawsuits—which would appear to fall squarely within the anti-SLAPP statute's definition of " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (§ 425.16, subd. (e).)

However, upon further consideration, it appears that some of Garcia's claims are independent of Corby's filing of the first two lawsuits. For example, Garcia's declaratory relief cause of action alleges that even if the default interest rate is applicable, Corby's predecessors-in-interest waived their rights to default interest for the periods in which they were the holders of the note and deed of trust. Among other things, Garcia's complaint alleges that Corby "cannot come in as a successor-in-interest and go back and retroactively apply [the] [d]efault [r]ate (even if *arguendo* such default [r]ate was applicable)." While this dispute may be related to the prior litigation, it is also an independent and ongoing dispute between Garcia and Corby.

We find *City of Cotati, supra*, 29 Cal.4th 69, instructive on this point. There, our Supreme Court held: "the mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*Id*. at pp. 76–77.) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*Id*. at p. 78.)

In *City of Cotati*, a city adopted a mobilehome park rent stabilization program. (*City of Cotati, supra*, 29 Cal.4th at p. 72.) Owners of mobilehome parks then sued the city in federal court, seeking declaratory relief, an injunction, and damages resulting from the program. (*Ibid*.) The city responded by suing the owners in state court for declaratory relief, seeking a judgment declaring the rights of the parties under the rent stabilization program and determining the constitutionality of the ordinance in question. (*Ibid*.) The owners then moved to strike the city's complaint under the anti-SLAPP statute, arguing the city's state court action arose from the owners filing the federal action. The owners pointed to references in the city's complaint to the federal action. (*Id*. at pp. 72–73.) Notably, the city conceded that its purpose in filing the state court action was to gain a more favorable forum and to persuade the federal court to abstain from hearing the owners' suit. (*Id*. at p. 73.) The trial court granted the motion, and the Court of Appeal reversed. (*Id*. at p. 73.)

The Supreme Court granted review and affirmed the Court of Appeal, concluding the city's state complaint did not arise from

10

protected activity merely because it was in response to the owners' federal action. (*City of Cotati*, *supra*, 29 Cal.4th at pp. 76–77.) In reaching this conclusion, the court reasoned that to construe " 'arising from' " in section 425.16 to mean " 'in response to,' " would "in effect render all cross-actions" or "responsive litigation, generally" as "potential SLAPP's." (*City of Cotati*, at p. 77.) In rejecting this construction, the court stated: "Just as a cross-complaint often 'arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges' [citations], so may a responsive but independent lawsuit arise from the same transaction or occurrence alleged in a preceding lawsuit, without necessarily arising from that earlier lawsuit itself." (*Id*. at p. 78.) "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' " (*Id*., at p. 77.)

We find this reasoning and conclusion particularly apt here where it appears Garcia's declaratory relief cause of action would have existed regardless of Corby's filing of the two prior lawsuits. To illustrate the point, we find it helpful to ask whether Garcia's declaratory relief cause of action could have survived a special motion to strike in the second litigation had Corby named Garcia as a defendant and Garcia responded by filing a cross-complaint, seeking a declaration of her rights as the current owner of the Property. (See *City of Cotati*, *supra*, 29 Cal.4th at p. 77 [noting plaintiff's state action would have survived an anti-SLAPP motion had it been filed as a counterclaim in the federal action].) We find that it would have. This is because Garcia's declaratory

11

relief cause of action, at least partially, is based on the underlying dispute over Corby's initial calculation of the interest rate. This dispute over the interest rate exists independent of Corby's second action against the Abutins and the resulting default judgment. Thus, like *City of Cotati*, it appears at least a part of Garcia's dispute with Corby would exist independently of the two prior litigations. Therefore, it cannot be said that all of Garcia's allegations arise from Corby's right of petition or free speech or that all of Corby's actions constitute protected activity.

Further, as the *City of Cotati* court explained, the anti-SLAPP statute is not meant to be a complete defense to all responsive litigation generally. (See *City of Cotati*, *supra*, 29 Cal.4th at pp. 77–78.) We find this conclusion helpful to Garcia. This is because her claims may partially depend on attacking the default judgment itself to the extent Corby is trying to enforce that judgment against Garcia through a payoff demand or foreclosure sale. Regardless of Garcia's chance of success on the merits, such an attack is permissible. (See *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1328; *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228.)

Indeed, Garcia has cited a somewhat factually similar case in which a lender and trustee successfully attacked a default judgment entered in their absence. (*Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 665 (*Washington Mutual*).) In *Washington Mutual*, a lender and trustee sold a debtor's residential property through a foreclosure sale after the debtor defaulted on his payment obligations. (*Id.* at pp. 664–665.) The debtor then sued the lender, trustee, and purchaser to set aside the sale. (*Id.* at p. 664.) The lender and trustee

12

demurred to debtor's complaint, but the debtor later dismissed the lender and trustee before the demurrer was heard. The debtor then obtained a default judgment against the purchaser. (*Ibid*.) The default judgment declared the foreclosure sale null and void and gave the purchaser the right to seek recovery of the purchase price from the lender and trustee. (*Ibid*.) The lender and trustee then filed a separate action, seeking declaratory relief that the sale was valid and that they had no liability to any party. (*Id.* at p. 665.) The *Washington Mutual* court affirmed the trial court's finding that the lender and trustee were indispensable parties to the prior lawsuit and that the default judgment against the purchaser was therefore subject to collateral attack. (*Ibid*.)

Regardless of Garcia's chance of success, Corby's anti-SLAPP motion effectively cut off a similar collateral attack before the merits of Garcia's claims could be heard, effectively insulating the judgment through the anti-SLAPP statute from a potentially meritorious defense. While we recognize the anti-SLAPP statute's purpose is to address unmeritorious lawsuits, it is primarily intended to protect direct petitioning of the government and petition-related statements and writings. (*Park*, *supra*, 2 Cal.5th, at p. 1071, fn. 4.) Here, Garcia's dispute with Corby existed prior to any litigation initiated by Corby, but rather began when Corby demanded a payoff three times the amount its predecessor-in-interest had previously demanded from Garcia. This temporal distinction precludes a finding that all of Garcia's claims arise from protected activity under section 425.16.

Accordingly, Corby has failed to meet its burden under the first step in evaluating its anti-SLAPP motion—whether the

challenged allegations or claims arise from protected activity. Further, because Corby sought to strike Garcia's entire complaint and did not take the additional step of identifying specific allegations to be stricken, we need not consider whether any specific claims were sufficiently targeted by the motion. (See *Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1109 ["[W]hile courts may strike less than the entirety of a complaint or pleaded cause of action, the trial court is not required to take on the burden of identifying the allegations susceptible to a special motion to strike"].)

In light of our conclusion that at least some of Garcia's claims do not arise from protected activity, we do not reach the anti-SLAPP statute's secondary question whether Garcia established that there is a probability that she will prevail on her claims. (See *City of Cotati*, *supra*, 29 Cal.4th at pp. 80–81.) Because we reverse the order granting the anti-SLAPP motion, the attorney fee award must also be vacated. (*Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1145.)

## DISPOSITION

The order is reversed and the attorney fee award is vacated.  Appellant shall recover her costs on appeal.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.